CASE 14—ACTION FOR PERSONAL INJURIES—OCT. 4.

# Groves v. Louisville Ry. Co.

APPEAL FROM JEFFERSON CIRCUIT COURT—LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT, AND PLAINTIFF APPEALS. REVERSED.

STREET RAILROADS—FAILURE TO KEEP TRACK IN REPAIR—INJURY TO TRAVELER ON STREET.

Held. It is the duty of a street railroad company to keep its track from becoming an obstruction to public travel, and it can not escape liability to a traveler for its failure to do so, by showing, that the obstruction was caused by the wearing away or the natural sinking of the street from the rails.

PRYOR, O'NEAL & PRYOR AND R. C. & J. J. DAVIS, ATTORNEYS FOR APPELLANTS.

1. The verdict is contrary to the evidence and is not sustained by the evidence.
2. The verdict is contrary to the law.
3. The court erred in refusing to give instructions, numbered 1, 2 & 3 offered by the plaintiff.
4. The court erred in giving instructions 1, 2, & 3 of its own motion to which the plaintiff excepted.
5. The court erred in admitting incompetent and illegal testimony.

### AUTHORITIES CITED.

Encyclopedia of Law, vol. 23, p. 983; Pearce on Railroads, p. 248; Booth on Street Railways, sec. 243; Wood on Railroads vol. 1, sec. 225; P. & E. R. R. Co. v. The Commonwealth, 80 Ky., 149; Fash v. Third Ave. R. R. Co., 1 Daily (N. Y.), 148; Gillett v.

Western R. R. Corporation, 8 Allen (Mass.), 560; Railway Co.
v. Stole, 87 Tenn., 746; Houston Street Railway Co. v. DeLes-
denier, 19 S. W. R., 366; Lowrey v. Brooklyn City, etc., R. R. Co.,
4 Abbott (N. C.), 32; Cline v. Crescent City R.R.Co.,43 La. Ann.,
332; Flood v. Pragoff 79 Ky., 607; Ky. Tob. Asso. v. Ashley, 5
Rep., 184; Commonwealth v. Hourigan, 89 Ky., 305; Newman's
Pleadings, page 523; Boone's Code Pleading, sec. 65; Aldrich v.
Gorham, 77 Maine, 287; Ringo v. City of Cohoes, .77 N. Y., 88;
Houghtaling v. Shelly, 51 Hun., 598; City of Atlanta v. Wilson,
Georgia, 544; City Council of Augusta v. Hudson, 94 Georgia, 135;
Rohrbaugh v. Barbour Co., 39 W. Va., 473; Hill v. City of
Kansas, 54 Mo., 67; Bobson v. Inhabitants of Rockport, 101
Mass., 93; Stone v. Inhabitants of Hubbardtown, 100 Mass., 49.

FAIRLEIGH, STRAUS & EAGLES and KOHN, BAIRD & SPINDLE,
ATTORNEYS FOR APPELLEE.

1. The appellee's motion for a peremptory instruction should have
been sustained, the evidence clearly showing that the proximate
cause of the injury complained of, was due to the fright and run-
ning away of his horse. (Higgins v. Boston &c., 168 Mass. 486;
Canal v. City of Cambridge, 163 Mass., 91: Titus v. North Bridge,
97 Mass., 258; Hardin v. Taunton, 97 Mass., 266; Jackson v.
Town of Bellevue, 30 Wis., 280; McFarland v. Town of Sullivan,
74 N. W. Rep., 558; Schaeffer &c. v. Jackson Township, 18 Law-
yers, Rep., Annotated, 100; Fogg v. Nahant 98 Mass., 578; Stone
v. Hubbardston, 100 Mass., 49.

2. The following instruction offered by the appellee and refused by
the court should have been given:

"The court instructs the jury that it is not the duty of the de-
fendant to so construct and maintain its tracks, as to make it safe
for persons driving across them at an extraordinary rate of
speed, or to persons who may be driving horses which are
frightened and running away."

All the authorities cited under the first proposition are cited
in support of this proposition..

3. The primary and proximate cause of appellant's injury was the
running away of his horse, and not the condition of appellee's
tracks or the condition of the public highway on which he was
traveling. The proof conclusively shows that his frightened
horse had carried the appellant and his buggy across the high-
way, across the appellee's tracks to a vacant space beyond the
highway, a space not traveled, and several feet beyond the travel-
ed highway. Appellant was not injured by any obstruction in the
highway proper. There was no obstruction caused by appellee's
tracks in the highway proper. See following authorities: Moore

v. Abbott, 37 Me., 46; Coombs v. Topsham, 38 Me., 204; Anderson v. Bath, 42 Me., 346; Moulton v. Sanford, 51 Me., 127; Chartiers Township v. Phillips, 122 Pa., 601; Joseph Kiefer v. Hummelstown, 17 Lawyers' Reports Annotated, 218; Jackson Township v. Wagner, 127 Pa., 184; Worrilow v. Upper Chichester Township, 1 Pa. Adv. Rep. 622.

4. Authority to the appellee to use the streets or the turnpike did not impose upon it the obligation to maintain the street or turnpike proper adjacent to its tracks or between its tracks. Its only duty was and is to properly construct its tracks so as not to be dangerous to public travel in the ordinary way, and to keep its tracks in that condition so far as the tracks themselves are concerned. (See sec. 242 of Booth on Street Railway Law, 50 Mo., 94.)

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

It is alleged in the petition that the plaintiff, now appellant, was, about the 31st December, 1896, by the gross negligence of the defendant, its agents and servants, thrown from his buggy, his leg broken, mashed, and bruised, and otherwise injured, and was caused great suffering of mind and body, loss of time, and was permanently injured, and sustained damages in the sum of $15,000; that at said time his buggy came in collision with the rail of one of the defendant's tracks on Baxter avenue, or Bardstown road, in Louisville and said rail was negligently permitted to stand up high above the level of the street, and was in a dangerous and defective condition, and was a nuisance, and had been maintained in said condition for a long time prior to said accident, and by reason of said condition he received the injuries aforesaid.

The first paragraph of the answer is a traverse of the allegations of the petition as to the injury complained of, as well as a traverse of all negligence on the part of defendant. The second paragraph pleads contributory negligence on the part of plaintiff, which plea was denied by reply.

At the conclusion of plaintiff's evidence defendant moved

the court to instruct the jury peremptorily to find for de-
fendant, which motion was overruled by the court.     At
the conclusion of all the evidence, a like motion was made
by defendant, and overruled by the court.   A trial result-
ed in a verdict and judgment for defendant, and, plaintiff's
motion for a new trial having been overruled, he prosecutes
this appeal.

The grounds relied on for a new trial are as follows:
"First, that the verdict is contrary to the evidence, and is
not sustained by the evidence; second, that the verdict is
contrary to the law; third, that the court erred in refus-
ing to give instructions numbered 1, 2, and 3 offered by
plaintiff, and in refusing to give either of said instruc-
tions, to which ruling of the court the plaintiff excepted
at the time; fourth, that the court erred in giving instruc-
tions Nos. 1, 2 and 3 of its own motion, to the giving of
which instructions and each of same plaintiffs objected and
excepted at the time; fifth, that the court erred in admit-
ting incompetent and illegal testimony, as shown by the
stenographer's report of same, to the introduction of which
testimony the plaintiff objected, and still excepts."

The plaintiff moved the court to give the following in-
structions to the jury:

"(1) The court instructs the jury that the law made it
the duty of the defendant to so lay their tracks and main-
tain them in such condition and repair as not to interfere
with the safety and convenience of the public travel on the
streets occupied by their rails, and if the jury shall believe
from the evidence that the defendant negligently failed to
exercise ordinary care in the laying of the tracks, or in
maintaining them in such condition and repair as to inter-
fere with the safety or convenience of the public travel on
the street, and that by reason of the negligent failure of

said defendant in laying its track, or maintaining it in such condition and repair, the plaintiff received the injuries complained of in his petition, then the jury shall find for the plaintiff, unless the jury shall believe from the evidence that the plaintiff, by his own negligence, contributed to the accident by which he received his injuries, and that but for his own contributory negligence the accident would not have happened.

"(2) The court instructs the jury that by the term 'negligence,' as used in the instruction No. 1, is meant the failure by defendant to exercise that degree of care that ordinarily prudent persons observe under the same or similar circumstances.

"(3) The court instructs the jury that by the term 'contributory negligence' is meant the failure on the part of the plaintiff to observe that degree of care that ordinarily prudent persons exercise under the same or similar circumstances for their own safety.

"(4) If the jury find for the plaintiff, they will assess his damages in such sum as will fully compensate him for any injuries he may have sustained by reason of the accident, and in so doing the jury may take into consideration his loss of time any physical pain and mental suffering he many have endured, and any impairment of his ability to earn money, the whole not to exceed the sum of $15,000, the amount claimed in the petition."

The court refused to give Nos. 1, 2, and 3, but gave No. 4.

Defendant then moved the court to give instructions Nos. 1, 2, 3, 4, 5, 6, and 7, which are as follows:

"(1) If the jury believe from the evidence that the plaintiff's horse and buggy had passed over defendant's tracks

and left the turnpike proper, and that the plaintiff, in an effort to bring his horse and buggy back upon the pike, pulled said horse against the extreme western rail of defendant's track, which is situated upon the western edge of the turnpike, and thereby broke the wheels of said buggy, and threw the plaintiff out and injured him, then the law is for the defendant, and the jury should so find; unless the jury shall believe from the evidence that the extreme western rail of defendant's track as originally constructed was dangerous and unsafe to the traveling public, and that the accident was due to, or caused by, such defective or dangerous condition in the original construction of said western rail, if any such there was, in which latter event the law is for the plaintiff, and the jury should so find.

"(2) The court instructs the jury that the plaintiff had no right to leave the turnpike proper with his buggy, and if he did so, and was injured in any effort to get back upon the turnpike, then the law is for the defendant, and the jury should so find.

"(3) If the jury believe from the evidence that the defendant's track was originally properly constructed, so as not to be dangerous to public travel, and further believe from the evidence that the track where the accident happened became dangerous, not by reason of any defect in said track or any change in the grade of said track, but by the reason of the failure of the turnpike company or the city of Louisville to maintain the roadbed of the turnpike or of the street, the law is for the defendant, and the jury should so find.

"(4) The court instructs the jury that it is not the duty of the defendant to keep the street or turnpike in repair

between defendant's tracks or next to defendant's rails; that the only duty defendant owes to the public is to properly construct its tracks so as not to be dangerous to public travel, and to maintain said construction as originally constructed; and that it is the duty of the city to maintain and properly construct its streets between defendant's tracks, and along the side of defendant's tracks, so as to prevent said tracks from becoming dangerous to public travel.

"(5) If the jury believe from the evidence that the plaintiff's horse became frightened and ran away with plaintiff, and by reason of said fright became uncontrollable by plaintiff, and they further believe that the injuries received by plaintiff were due to the fact that his horse ran away with him, then the law is for the defendant, and the jury should so find.

"(6) The court instructs the jury that it was not the duty of the defendant to so construct or maintain its tracks as to make it safe for persons to drive across them at an extraordinary rate of speed, or to persons who may be driving horses which are frightened and running away.

"(7) If the jury believe from the evidence that the tracks at the time plaintiff was injured were not in such condition as to be dangerous to the ordinary traveler upon the streets, then the law is for the defendant."

The court sustained plaintiff's objection to Nos. 2, 5, 6 and 7, and overruled the objections to Nos. 1 and 4. The court, then, upon its own motion, gave instructions 2, 3, and 5; also instructions 1 and 4, offered by defendant. The instructions so given by the court are as follows:

"(1) The court instructs the jury that it is not the duty of the defendant to keep the street or turnpike in repair between defendant's tracks or next to defendant's

rails; that the only duty defendant owes to the public is to properly construct its tracks so as not to be dangerous to public travel, and to maintain said construction as originally constructed; and that it is the duty of the city to maintain and construct its streets between defendant's tracks alongside of defendant's tracks so as to prevent said tracks from becoming dangerous to public travel.

"(2) If the jury believe from the evidence that defendant's track was originally constructed so as not to be dangerous to public travel, and shall further believe from the evidence that the said track where the accident happened became dangerous, not by reason of any defect in the track or any change in the grade of said track, but by reason of the failure of the turnpike company or the city of Louisville to maintain the roadbed of the turnpike or of the street in a safe condition, and that such failure on the part of the city or turnpike caused the accident and injury to the plaintiff, the law is for the defendant, and the jury shall so find.

"(3) If the jury believe from the evidence that the plaintiff's horse and buggy had passed over the defendant's track, and had left the turnpike proper, and that the plaintiff, in an effort to bring his horse back upon the pike, pulled the said horse against the extreme western rail of defendant's track, which is situated upon the western edge of the turnpike, and thereby broke the wheels of said buggy, and threw plaintiff out and injured him, then the law is for the defendant, and the jury shall so find, unless the jury shall believe from the evidence that the extreme western rail of defendant's track as originally constructed was dangerous and unsafe to the traveling public, and that the accident was due to, and caused by, such defective or dangerous condition in the original construction of said

western rail, if any such there was, in which latter event the law is for the plaintiff, and the jury should so find.

"(5) The court instructs the jury that, if they find for the defendant, they will by their verdict simply say so, and no more."

It is the contention of appellee that the peremptory instruction should have been given; hence it is argued that, if any errors occurred, they did not prejudice plaintiff's substantial rights; therefore the judgment should be affirmed. It, however, seems to us that there was sufficient evidence introduced to authorize a submission of the cause to the jury, unless the law is as given in instruction No 1, which seems to require no duty of the railway company except to construct its track at first so as not to be dangerous to public travel, and to maintain it as at first constructed.

The principal question presented for decision is what duty, if any, the defendant owes to those using the streets. It seems to be the contention of appellee that if the tracks are at first constructed so as not to materially obstruct and endanger the safety of persons using the streets, and that the rails remain in the position first placed, the defendant is not liable for any damages to persons or property by reason of the rails or tracks becoming an obstruction by reason of the wearing away of the street from the rails or natural sinking or from any cause whatever. The instructions of the trial court seem to sustain the contention of appellee. If the contention be sound, the defendant would not be liable for damage caused by its rails being twelve inches or more above the street, if such a result was not caused by a change of the rails or track from the position the same was at first placed. It would thus seem that, according to the instructions given, appellee could continue to use its track, although the same was a constant

Groves v. Louisville Ry. Co.

nuisance and danger to life and property, and that all persons damaged by the obstruction and height of the rails above the street or road level would have to look alone to the city or turnpike company. We can not assent to any such construction of the law. No doubt the city or turnipike company would be liable for failing to discharge its duty in respect to repairing streets, but, even if it be conceded that it is the duty of the city to do all that is necessary to keep the streets in proper and safe condition, yet the defendant can not lawfully operate and control railway tracks which are a material obstruction to travel or dangerous to life or property, and still escape liability for damage or injuries resulting therefrom, or resulting from permitting the tracks or rails to become dangerous to those traveling such streets. We think public policy and public necessity alike demand that street-railway companies should see to it that the streets between the rails and next to them on all sides should be kept level with the rails, or so nearly level as not to endanger the lives or property of those having a right to cross them or be upon them. The rails and road are a permanent structure, and necessarily keep the travel across and near to the rails from being the same that it would otherwise be; hence the use by such companies is not at all analogous to the use of the streets by the public generally. We think the doctrine announced in Paducah & E. R. Co. v. Com., 80 Ky., 149, sustains the views herein expressed.

In 23 Am. & Eng. Enc. Law, p. 983, it is said: "Independently of charter provisions and of subsequent statutes and ordinances, the street railway company is bound so to construct and maintain its road that the free use of the whole street by the public shall not be materially impaired; and

if any injury occurs by reason of failure so to construct and repair its tracks, the company is liable for damages."

In Pierce, R. R. p. 248, it is said: "A railroad company which is authorized to cross highways is under a legal duty to construct its road across them in a reasonable manner, with reference to the double use of the crossing for its own purposes and for those of ordinary traveling. It is bound to keep the crossing as safe and convenient for public travel as is practicable, and is liable to individuals using the highway for injuries caused by defects and obstructions created by it which could have been avoided with reasonable precautions. The same obligation rests upon a company when, under authority of law, it lays a track upon and along the highway."

In Booth, St. Ry. Law, section 243, it is said: "In the absence of such a duty imposed by statute or ordinance, a company can not be required to construct a new pavement on any part of the streets or highways occupied by its railway, but with reference to repairs the rule seems to be different. The character and extent of the use to which that portion of the street is subjected render frequent repairs necessary: hence it has been held that, where the defective condition of the street is caused by the failure of a company to keep the streets traversed by its tracks in good repair, it must answer for the consequences."

In 1 Wood, R. R., p. 757, it is said: "Hence, where a railroad company has been permitted to lay its track along or across a highway, it is bound to the use of every reasonable precaution to prevent injury to those passing along the highway, or crossing its track that is laid along or across the highway; and if it fails to exercise a proper degree of care, not only such as is provided by statute, but also such as is rendered necessary by the character of the

obstruction and its location, having reference to a like reasonable exercise of care on the part of those approaching the obstruction, it becomes a nuisance to the extent of its injury to individual rights, and renders the company liable in damages for all the consequences."

In Gillette v. Railroad Corp., 8 Allen, 560, it is said: "A railroad company which so constructs its track at a crossing of a highway as to render a highway dangerous or inconvenient to travelers thereon is liable for any injury sustained by a traveler on the highway in consequence of the defect, although he might also have a remedy against the town, which was bound to keep the highway in repair."

The question under consideration was so thoroughly discussed and considered in Memphis, P. P. & B. Ry. Co. v. State, 87 Tenn., 746, (11 S. W., 946), that we copy the entire opinion: "The defendant railway company and William Katzenberger were indicted for creating and maintaining a nuisance in McLemore avenue, Shelby county, and it is charged that such nuisance was consequent upon the unlawful location and improper maintenance of a railway on said avenue. William Katzenberger was receiver of the defendant company, and the condition complained of in the indictment existed at the time of his appointment, and continued during his management, up to the time of indictment. It appears from the evidence that the part of the avenue occupied by the track of the defendant company was not, at all points, in such condition that the same could be crossed by travelers on horseback or in vehicles, or be traveled over longitudinally, with safety. By an agreed state of facts, it appeared that the 'railroad tracks, its ties, and rails were above the surface of McLemore avenue, a public road at the time laid in the indictment, and obstructed public travel on that part of said highway occu-

pied by said railroad, as alleged in the indictment.' The decision of the cause was submitted to the judge without a jury, and he found defendants guilty as charged in the indictment, fined them $1,000, and ordered the obstruction to be removed, unless defendants should so do within 30 days. It appearing that the receiver had no means and no authority, under his appointment, to abate the nuisance or pay the fine, the amount of his fine was reduced by the court to $5. On January 29, 1887, the Memphis, Greenwood & Prospect Park Railroad Company was incorporated under the regular form provided for street-railroad companies, as set out in sections 1920-1925, Mill. & V. Code. Section 1921 provides that such companies are 'authorized to consummate any contract with the county court necessary to get the right of way along the public roads of the county.' At the April term, 1887, said company applied to the county court of Shelby for permission to lay its track upon that portion of McLemore avenue designated in the indictment, and on April 22, 1887, a contract was made between the county and said company, whereby the county consented to the construction of a railroad by said company upon said portion of McLemore avenue. This contract contains provisions as to the manner of grading and constructing the road, and provides that the company, 'at the crossing of each street and alley on said avenues and roads, shall place good and sufficient crossings, so as not to interfere with travel over such streets and roads.' There is no stipulation for the keeping in repair by the company of any portion of the avenue occupied by its track, or of the crossings. On October 24, 1887, the defendant, the Memphis, Prospect Park & Belt Railroad Company, was chartered under the form provided for steam railway companies. Defendant company, so far as the record shows,

Groves v. Louisville Ry. Co.

had no contract with the county, but on November 22, 1887, it purchased the franchise and properties of the Memphis, Greenwood & Prospect Park Railroad Company, which included the line of railway then being operated upon McLemore avenue by said company under its charter and its contract with the county. On April 10, 1888, a committee, to whom had been referred a petition of .the Memphis, Greenwood & Prospect Park Railroad Company, reported that they had gone over the track and roadbed of said company located on said portion of said avenue, and found the grading satisfactory. Nothing is said in this report, nor in any other proceedings of the county court which appear in the record, about the manner of construction of the road, and nothing of the acceptance of the road by the county, as having been constructed in accordance with the contract with the county, as counsel for the defendant contend. There was no change in the grade, and no repairs from the time of said report up to the time of the indictment. The railroad provided for in the charter and the contract with the county is that known as a 'street railroad.' Such a road contemplates travel upon it longitudinally. This is manifest from the charter, which provides for other vehicles yielding the right of way over the track and switches to the passing cars, and for the cars yielding the right of way of the track to the fire engines. Mill. & V. Code, section 1924. There is no proof by defendant as to how the road was constructed. It relies upon the alleged acceptance of the county as conclusive evidence that it was on April 10, 1888, up to the requirements of its charter and of the contract with the county, and the further legal proposition that, having so constructed its road, it was under no obligation to keep the roadbed and crossings in repair. As stated above, the county

court did not pass upon and accept the road. The report relied upon as showing this fact related merely to grades in reference to the grades of surrounding county roads, a uniform system of grading being the particular matter under contemplation. There is nothing in the record to show when the nuisance began,—whether the road was a nuisance and obstruction to travel from the start, or wheth- er it became so by use and the action of the elements. The defense is made upon the latter assumption, and it is pre- sumable that the facts are that way; for otherwise there could be no ground for contest. The State and defendant both treat the case as presenting only the question of duty to repair, and it will be considered in that respect. The doctrine contended for is, that a railroad company after constructing its road, and having restored those portions of the public highway disturbed to their former state of use fulness, is under no duty to make any repairs. The case of Railroad v. State, 16 Lea, 300, is relied on as a con- clusive adjudication of this question in favor of defendant; but that case has been expressly overruled at this term in an opinion by Judge Caldwell in the case of Dyer Co. v. Chesapeake, O. & S. W. R. Co., 87 Tenn., 712, (11 S. W., 943). In Louisville & N. R. Co. v. State, 3 Head, 524, the following principles, as applicable to the occupancy of pub- lic highways by railroads, are stated: 'Railway companies are liable to indictment for obstructing a public high- way contrary to the powers granted in their act.' 'The company must so use their own rights as not to injure or take away the rights of others.' Pierce, R. R., p. 245, says: 'The laying of a railroad across highways often requires excavations and erections, and a greater or less change in the surface. The duty, however, to restore the highway, as far as may be, to its former condition, and

Groves v. Louisville Ry. Co.

to erect and maintain structures necessary for such restoration, is presumed to be incumbent on the company, even without any express requirement imposed by statute. . . It is a continuing duty, and binds other corporations which succeed to the ownership or possession of the railroad.' To the same effect is Mills, Em. Dom., section 198. In a note on page 332, 10 Am. & Eng. Ry. Cas., giving a summary of the decisions on this subject, the following is stated: 'As to question whether the company is bound to maintain the crossing permanently or not, the current of authority seems to be that it is so bound. People v. Chicago & A. R. Co., 67 Ill., 118; Eyler v. Commissioners, 49 Md., 257;' and this, though by a statute the obligation is in express terms only not to obstruct the safe use of the highway. Where a statute provided that 'a railroad shall be so constructed as not to obstruct the safe and convenient use of the highway,' the obligation of the company was held not to be limited to the original construction. 'It must keep the railroad so constructed at all times. Its obligation so to do is continuing.' Wellcome v. Inhabitants of Leeds, 51 Me., 313. The only case called to our attention holding the contrary doctrine is that of Railroad Co. v. Long, 6 Am. & Eng. Ry. Cas., 254. In Burritt v. City of New Haven, 42 Conn., 174, it is declared that the charters of corporations which confer exclusive privileges for the particular advantage of the grantees are to be construed literally for the benefit of the public, and strictly as against the corporations, and that the duty of a railroad company, under its charter, to restore a highway to its former usefulness, was not discharged when it restored it to a proper condition at the time the railroad was constructed, but the duty was a continuing one. The duty to maintain the usefulness of streets under charters which did

Groves v. Louisville Ry. Co.

not, in express terms, impose the obligation to repair, was enforced in two Minnesota cases, one reported in State v. St. Paul M. & M. Ry. Co., 36 N. W., 870, and the other in State v. Minneapolis & St. L. Ry. Co., 39 N. W., 154. In Wood's Railway Law, it is stated that 'the right to lay a railway track in a public street or highway carries with it the obligation not only to lay it in a proper manner, but also keep it in repair'; and, 'if the statute simply provides that the company "shall restore the highway to its former state of usefulness," etc., they are invested with a discretion as to the matter, and are not subject to the control of the municipal authorities in this respect, and are liable for the consequences of a failure to discharge this duty, and are also charged with the further duty of keeping that part of the highway in proper condition. In other words, the obligation imposed upon them in this respect is a continuing one, and they must so restore the highway that its use by the public shall not be materially interfered with, and so that it shall not be rendered less safe or convenient, except in so far as diminished safety and convenience are inseparable from its use by the railroad; and the question whether or not the company has discharged its duty is a question of fact for the jury.' See 2 Wood, R. R., p. 970, section 269, note 1, and p. 976. In the case of Dyer Co. v. Chesapeake, O. & S. W. R. Co., 87 Tenn., 712, (11 S. W., 943), it was held that where a railroad company makes a cut through a public highway, and builds a bridge over its road, the law imposes upon it the continuing duty of repairing the bridge, although its charter did not expressly so require, but simply by its express terms imposed the duty of restoring the highway to its former state of usefulness. These rules laid down in respect to steam-railway companies apply not only to the

crossings, but to the entire road-bed of street railway companies; for their occupation of the street is held not to be a new burden upon the street or a diversion of its use as a highway, for the reason that such occupation is assumed to be entirely compatible with the use by the public. This is based upon the idea that a street railway, properly constructed and maintained, is not an obstruction, though it may be an inconvenience. When it is so constructed or maintained as to become an obstruction, it ceases to preserve the character upon which its grant of rights in public highways is predicated. The charter of this company shows that it was intended that the space occupied by it should be used by the public as a highway, the right of way being given to defendant's cars. It is its common law duty to keep the space of the highway occupied by its road-bed (which extends, at least, to the ends of its cross-ties) properly graded and in good repair, so as not to be any obstruction to travel across the roadbed longitudinally upon it, and also to keep the crossings where its roadbed is traversed by streets in good repair. The judgment is affirmed, but the fine against the company is reduced to $50. The cause is remanded for further proceedings, and defendants are given 60 days from rendition of this judgment to abate the nuisance, in accordance with the rule laid down in this opinion; but, if they shall fail therein, then the obstruction shall be removed under orders from the lower court."

The same question was considered at length in Railway Co. v. De Lesdernier (in the Supreme Court of Texas) (19 S. W., 366). We copy the entire opinion, which is as follows: "This suit was brought by the appellee, Mrs. De Lesdernier, against the appellant, the Houston City Street-Railway Company, for damages for personal injury

alleged to have been sustained by her by the negligence of the defendant in so constructing its track and permitting it to so get out of repair that the rails on Congress street 'protruded and extended above the surface of the street to an unreasonable and dangerous height,'—much greater than the safety of the persons using the same demanded,— and alleging that while she was driving carefully along the street the wheels of her buggy came in contact with the elevated rails, overturning her buggy, and throwing her violently to the ground, producing the injuries complained of. Besides general demurrer and denial, defendant answered, setting up that its track was laid under permission of the proper authorities,—of the mayor, aldermen, and inhabitants of the city of Houston; that it was laid and has been maintained in all respects as required and directed by the city council and other proper officials of the city of Houston, and, if there is any fault or defect in the same, it is not the fault of the defendant, but of the city of Houston, which has exclusive control and regulation of the street and of the laying of the track thereon. Defendant also set up contributory negligence in general terms. The trial resulted in a verdict and judgment for plaintiff for $500, from which defendant has appealed. The testimony for plaintiff is substantially that she was driving along the street in a dogcart, at a moderate rate of speed, and, seeing some vehicles in the street ahead, to avoid a collision with them, she had to turn to the left toward the street-car track, and in crossing the same diagonally the right wheel of the dogcart struck the outer rail of the track, and she was thrown to the ground, and hurt as alleged. The vehicle was not turned over. It was in the proof for plaintiff that the rails of the track were at the place of the accident about one-fourth to three-fourths of an inch above

the level of the pavement,—high enough to catch the wheel of the cart,—and that it was this that caused the accident. The track was higher at that time than at the time of the trial. One Frost, a witness for plaintiff, testified that the accident would not have occurred if the track had not been defective. The testimony of the defendant tended to show that the track was not more than one-fourth of an inch above the pavement, or about even with the street grade, as nearly as it could be,—not enough to be danger-ous with careful driving; that the rails were put down flat, as required by the city, and were put down under the direction of the city officials; that the grooves were cut with an adze into the cypress blocks of the pavement 1¼ or 1½ inches, as required by the city; that the work was done and supervised by the city, and was properly and skillfully done, with a view to the safety of persons and vehicles using the same, and was not dangerous. The city granted the right of way to the company to be so used as not to impede the streets or interfere with the use of the same by the public, stipulating 'that all lines of road now owned or controlled and constructed, as well as those hereafter to be constructed, by said company, should be put in thorough repair, and maintained in good order'; also 'that the rail-ways should be constructed of good and proper material, and should be equipped and maintained as first-class rail-ways'; requiring that all roadbeds should be constructed and repaired to conform to the established grade of the streets, as fixed by the city engineer, under the direction of the city council, and that all work or repairs done upon defendant's lines that would in any manner affect the use of the streets by the public should be done to meet the approval of the city engineer, and should be altered by the company when notified by him to do so. It is made the

duty of the city engineer, when repairs become necessary, to notify the company's officers, and, in case it is not done by the officer so notified in a reasonable time, he is declared to be guilty of an offense. The city still retained control of its streets, and the manner in which the company should construct its works and use the same thereon. The appellant claims that the court erred in the following paragraph of its charge: 'A street-railway company using a public street by permission of the city council must so construct and maintain its track as to not unnecessarily impede travel, or to render travel over and across it more dangerous, to persons using it with such care and skill as a person of ordinary prudence and skill should use under the circumstances, than it would be but for such track being there in the condition it was.' The criticism of the charge is that it assumes that the track impeded travel, or rendered travel more dangerous on the street than it would have been but for the presence of.the same on the street, and tells the jury that it (the track) was in such certain condition. We do not see that the charge states to the jury what condition the track was in, or that it was more or less dangerous to travel, because of its condition, on the street. It only assumes the track to be in such condition as it really was; that is, such as the jury might.find it was. There is another objection to this charge, which is also made to the following charge, and they will be considered together: 'If you believe from the evidence that the defendant company so constructed its track on Congress street, at the place of the accident, as to unnecessarily obstruct passing over it by plaintiff and others driving vehicles over it, and if the plaintiff was in the exercise of such care and skill as a person of ordinary care and skill should have exercised at the time and under the circum-

stances, and if by reason of defendant's track being in the condition it was, if same unnecessarily made the use of said street more dangerous than it otherwise would be, and if plaintiff did not by her manner of driving contribute to her being thrown out of her vehicle, find for plaintiff, and assess the damage.' Appellant says the charge is erroneous, 'because under it, even if the jury believed from the evidence that defendant company constructed and maintained its track on Congress street in all things as directed and required by the proper authorities of the city of Houston, yet the jury were authorized to find for plaintiff if they believed that the track of defendant, so constructed and maintained, unnecessarily obstructed travel or impeded same, or rendered same more dangerous than it otherwise would have been, notwithstanding the charter of the city of Houston vested in the city council of said city the exclusive direction and control as to how such track should be laid, constructed, and maintained, and the further fact that defendant was bound to conform to such direction and control in the matter of placing and maintaining its said track, and notwithstanding the undisputed evidence showed that defendant had laid, placed, and maintained its track on said Congress street under and by the authority of an express ordinance or permit from the city of Houston, and under and in accordance with the directions and requirements of the properly constituted authorities of said city of Houston, to wit, its mayor, street commissioner, and city engineer.' We are unable to adopt as correct the principle contended for in the foregoing assignment of error. It means this: If, by the contract with the city, by ordinance, the company was guilty of negligence in the construction

of its road or in failing to repair it, by which a person driving along the street, having the right to use it in the manner it was used, and in the exercise of due care, is injured, it would not be liable, because the city had authorized such negligence, and had supervised and approved the work as it was done. If this should be the law, a street-railway company could, by agreement with the city, and by its approval and direction, construct and operate its road in such a manner as to violate any other right of the public without incurring liability. The act stated in the charge of the court would be unlawful if done by the city itself, and if done by the company, by permission and direction of the city, and if the city assisted in doing it, both would be wrongdoers. The nature of the case, the acts done, and by whom, forbid the idea that the city alone would be liable because it required the work to be performed as it was. The company was not bound to make the contract or perform it in an unlawful manner. The company can not shield itself behind the unlawful consent, approval, or act of the city. The contract with the city was not a contract with the public, and could not bind the public. The public can not be so bound to suffer wrong. If the company and the city joined and acted together in the commission of the wrong, there would be two wrongdoers instead of one, and each would be liable. Dillon, citing Railroad Co. v. Deitz, 50 Ill., 210, says: 'A street-railway company, authorized by the Legislature to lay down its track upon the street of a city, subject to such restrictions as the city council might impose, constructed its track under the direction of the city engineer, but in such manner, in crossing a gutter, as to cause surface waters to overflow and injure one of the adjoining proprietors, and it was held that the company was liable for the damages

resulting from the improper construction of their track.'
2 Dill. Mun. Corp. section 721. The true principle is, if
the plaintiff was rightfully driving on the street across the
track, and in doing so was exercising due care, and was
injured, as alleged, by reason of the negligence of the de-
fendant company in the construction of its track, or in
suffering it to become out of repair and dangerous to travel,
it would be liable, notwithstanding the city had directed
and agreed to such negligence, and approved it. Railway
Co. v. Nolan, 53 Tex., 148, 149. The court below tried the
case upon the correct principle, and did not commit the
error assigned. Several other assignments of error make
the same complaint as the above, insisting that the rights
of the company were not recognized by the court or jury.
They are not well taken, and need not be further noticed.
As to the verdict, we are not prepared to say that it is so
clearly unsupported by the evidence as to authorize an
appellate court to set it aside. There was testimony tend-
ing to show that the injury was caused by the negligence of
the company, as alleged. The jury have passed upon it,
and their verdict has been approved by the trial judge. We
do not think it should be disturbed. As to the contrib-
utory negligence of the plaintiff, insisted on by appellant,
we can not say that the verdict was wrong. Her testi-
mony showed that she was driving carefully, at an ordin-
ary gait, and that the accident was not attributable to
her or the horse she was driving, but to the condition of
the track; that she turned to cross the railroad track
under circumstances which justified her in doing so. The
fact that she was driving a dogcart may have required of
her more care than if she had been driving a four-wheeled
buggy; but such mode of conveyance would not deprive her
of a recovery if she was careful in the management of it,

and was not otherwise guilty of negligence that contributed to the injury, if it was caused by the company's negligence. Our conclusion is that the judgment of the court below ought to be affirmed."

In Cline v. Railroad Co., 43 La. Ann., 332, (9 South., 124), it is said: "There can be no doubt that a city is under the obligation of keeping its streets, sidewalks, etc., in good order or repair, so, at least, as to prevent serious accident or injury to persons using the same or to their property; and that, where such happens by the heedlessness or fault of the corporation, having previous knowledge of the bad condition of the street, sidewalk, or particular dangerous spot, and without any contributory act, whether by commission or omission, of the party affected, the corporation can be held to repair the damage occasioned. It is also well settled in law and jurisprudence that, although a municipal corporation, by virtue of the right with which it is vested of control over its streets, can legitimately grant to a railroad company the privilege to build its track and run its cars on the same, imposing upon it the burden of keeping them, from curb to curb or rail to rail, in good order and condition, so as to prevent injury, as it is itself bound to do, the concession of the grant, and the imposition and acceptance of the burden, do not relieve the corporation from liability should the company fail to comply with its obligations, and by its negligence and default inflict injury to one using due care and precaution, and not guilty of contributory neglect. It is also well recognized that a party injured has a double action against both the city and the railroad company, regardless of the contract between them, holding each as primarily responsible, and that when the city is mulcted it has the right to recover against the railroad company in the same action, if both are

defendants, and the city has properly brought the railroad company by a call in warranty or a distinct suit. It is likewise firmly established that an injured party, in order to recover, must be shown not to have been guilty of any contributory negligence; that is, the careless commission or omission of acts which, if prudently done or not done, would have avoided the occurrence of the injury occasioned by the heedlessness of another, and which is considered as the proximate cause of the accident. The evidence in this case establishes the stubborn facts of the existence of the hole, of the loose rail and protruding spike on the side, the fall of the man, the fracture of his skull on the rail and spikes, and his consequent destruction and death. Certainly there are three parties to this accident who may be charged with negligence. As against the driver, it is claimed that the hole was visible, as it was four feet long, two feet deep, and four inches wide, and it was about 3 o'clock p. m. when the wheel of his wagon got into it; that he must have seen it, and should have seen it; that, if he did not see it, it was because he did not do his duty in looking forward; that, if he saw it, he should have avoided it by stopping in time and taking a different course; that, if he did not see it, it was his own fault; that he was guilty of contributory negligence; and that his representatives have no right to complain, and seek indemnity through him. As against the city, it is urged that it was bound to keep its streets in good order and condition; that, had it done so, the hole would never have existed, or would have been stopped in time, and the accident would not have happened, that its defense of penury is bad, and that its contract with the railroad company did not exonerate it from the obligation. As against the railroad company, it is pressed that it was bound to keep in like

good order and condition the streets through which it
ran its tracks and cars, whether under the contract or in-
dependent of any agreement to that end; that surely it
was bound to keep its tracks, rails, and spikes designed to
fasten the same down so that no injury could be produced
thereby to any traveler on the streets, although using
the same with more or less usual inattention; and that,
if the condition of the loose rail and protruding spikes be
the proximate cause of the death, it is liable in damages.
It can not be reasonably supposed that the driver knew
of the condition of the hole, saw it, and intentionally ran
the fore right wheel of his wagon into it. The size and ap-
pearance of the hole were not such as necessarily and un-
avoidably must have provoked attention. The hole was
such as any one driving on the track may not have
noticed. The deceased had a right to drive on the track.
The right of way or franchise, conceded by the city to
the railroad company, did not deprive the deceased, or
any one else running vehicles on the street, from the right
of using any part of the street or the track itself. There
was no trespass. But even if the driver had seen the
hole, and had not avoided it, nothing shows that he knew
of its dangerous character. Could he be really charged
with negligence, it would not be with that sort of negli-
gence technically known as contributory, which is the com-
mission or omission by the party of an act amounting
to a want of ordinary care as concurring or co-operating
with the negligence of another, and which is the proximate
cause or occasion of the injury complained of. To con-
stitute contributory negligence, there must be a want of
ordinary care, and a proximate connection between that
and the injury. Beach, Contrib. Neg. 7. No doubt the
city was in default. The hole had been in the condition

Groves v. Louisville Ry. Co.

known for more than two weeks. Accidents had occurred, but which had produced no grave injury worth being judicially complained of. The city must be considered as having had notice of the condition of the hole, and it is no excuse for it to plead penury, or shift the responsibility on the railroad company so as to avoid liability. The city should have notified the company, but primarily it was bound to put the hole in a condition not to be dangerous. It should be blamed for not having done so. Nevertheless, the heedlessness of the city in the premises, however censurable, does not fasten upon it the responsibility in damages sought to be saddled upon it. The falling of the right fore wheel of the wagon into the hole caused a shock. That shock dashed the driver from the vehicle, and he was flung with some violence. The evidence shows that several other travelers on the street and on the track had met with similar accidents, and had been thrown from their carts on the pavement, but none were killed or dangerously hurt. The unfortunate fellows were more or less bruised, and that was all, although much in itself to some extent. In the present instance, the driver would have sustained no further injury had it not been that a condition of things existed at the time which did not exist previously, when the other accidents occurred. The city is not sued now for the suffering which the driver sustained in consequence of bruises inflicted by the fall. It is sued for damage suffered in consequence of the death of the driver, and the fact is that the city is not guilty of any negligence which was the proximate or direct cause of that catastrophe. The responsibility must rest on other shoulders. The defenses announced of the railroad company have no bottom to stand upon. Conceding all the facts averred, which would seem to tend to show a con-

dition of things amounting somewhat to *vis major* or uncontrollable circumstances, the railroad company can not be heard to say that they were of such character as to prevent it from stopping the hole, and preventing it from being dangerous,—from nailing down securely the loose rail, and fastening steadily the protruding spikes.   The plaintiff could sue independent of any contract between the city and the company.   Though true it be that the hole was somewhat dangerous, and was the cause of the shock which occasioned the fall, the certainty is that but for the loose rail and protruding spikes the traveler would not have met with an untimely and sudden death.   He would have fallen, would have received some bruises, for indemnifying which he would not probably have sued either the city or the company, but he would not have been killed.   The cause, *causa causans*, of the death was the violent coming in contact of the skull of the deceased with the loose rail and the protruding spikes, in consequence of which the skull was fractured or perforated, with almost instantaneous death as the result.   If, under the facts and the law, this railroad company can not be held responsible, but must be excused, what is the case in which a company can be held liable for omissions of duty which are the direct cause of irreparable calamity?   In the consideration of this case, and the law and jurisprudence applicable to it, we have consulted with advantage a new work, just issued on 'Roads and Streets,' by Elliott, which is quite commendable.   It is very difficult to compute the damages to which the plaintiff, in his own right and as tutrix, is entitled for the loss sustained by the death of the husband and father.   When she opened his estate. she produced the certificate of the coroner to prove the death, and she established from it that he was sixty-two years of age.   It is claimed that, according to the life

Groves v. Louisville Ry. Co.

insurance time tables, he would probably have lived twelve years more, and it is insisted that his earnings during that time would have amounted to a considerable sum, and that this amount, at least, should be recovered in this action.  It may be, and it may not be, that the party would have lived that time.  He might have died the next day, the next month, the next year, by disease, or some accident, or some unforeseen cause.  His earnings were small.  The evidence in that respect is entirely unsatisfactory and unreasonable.  The fact is that he was a wagon driver, doing jobs.  But he had to provide for a stable and shed for his horse and wagon, for feed for the animal.  He had to supply his own wants.  If he earned $1.50 or $2 a day, he could have saved very little to provide for his wife and daughter, who, it is to be presumed, owing to their age and condition in life, must have been able to support themselves to some extent."

It seems clear, upon both reason and authority, that it was the duty of appellee to see that the street or road in question was so nearly upon a level with the rails of its road as to reasonably prevent injury to the person or property of any person traveling or rightfully being upon said street or road, and, if it did fail so to do, it is liable in damages for such failure, without regard to whether any other person or corporation was liable to respond in damages for such injury.  It results from the foregoing that instructions Nos. 1, 2, and 3, given by the trial court, are erroneous.  Instruction 1, asked by plaintiff, is substantially correct.  For the reasons indicated, the judgment is reversed, and cause remanded, with directions to award the appellant a new trial, and for proceedings consistent with this opinion.

Petition for rehearing and modification of opinion filed by appellee and overruled.