HERMAN GEISE, APPELLANT, v. MERCER BOTTLING COMPANY, A CORPORATION, AND THE TRENTON AND MERCER COUNTY TRACTION CORPORATION, A CORPORATION, RESPONDENTS.

Argued November 20, 1914—Decided April 29, 1915.

1. It is the duty of the driver of a vehicle on a public highway to use some ordinary degree of care to observe and avoid defects in the surface of the highway ahead of him, and this duty is owing not only to himself, but also to others likely to be injured by a deviation of a vehicle from its proper course by reason of such defects.

2. A street railway company which installs and maintains in a public highway a switch or frog of such character and construction as to throw the wheels of passing wagons upon the adjacent highway and cause unusual wear thereon, resulting, in the course of time, in a deep hole or rut in the pavement likely to engage the wheels of passing vehicles and throw such vehicles out of their normal course, is under the duty of reasonable care to observe such unusual condition, and to guard against its becoming a danger to others using the highway.

3. An automobile truck, driven by a servant of defendant bottling company, ran into a deep rut next to a switch of defendant traction company, which rut, as the jury might have found, was due to the continued impact of wagon wheels thrown from the switch to the pavement by reason of the character of the switch. The truck then became unmanageable and swerved and ran around a corner and over plaintiff, who was crossing the intersecting street. *Held,* that a case for the jury was presented as to both defendants.

On appeal from the Mercer Circuit Court.

For the plaintiff-appellant, *Martin P. Devlin.*

For the defendant Mercer Bottling Company, *Edward L. Katzenbach (Frank S. Katzenbach, Jr.,* and *Peter Backes* on the brief).

For the defendant traction company, *George W. Macpherson.*

The opinion of the court was delivered by

PARKER, J. The question for decision is the propriety of a nonsuit directed by the trial court as to both of the defendants impleaded. The suit was for personal injuries arising from the plaintiff being run over by an automobile truck of the defendant bottling company, at or near the intersection of Market and South Broad streets in Trenton. The defendant traction company had car tracks in both streets, connected by a switch in Broad street. The street was paved with asphalt, and on each side of the tongue of the switch was a deep rut or depression, worn by wagon wheels. Defendant's employe, driving the truck along Broad street,

failed to notice the rut, and one of the front wheels entered it, wrenching the steering gear out of his hands or otherwise causing him to lose control of the truck, which at once swerved from its former course and turned uncontrolled into Market street in time to strike and run over the legs of plaintiff, who was crossing Market street on foot. The testimony indicates that the truck ran wild for about a hundred feet and stopped on the sidewalk. As against the bottling company the plaintiff counted on negligence of its driver generally; as against the traction company he charged that it carelessly and negligently maintained its tracks, roadbed, &c., in a dangerous and unsafe condition, and by reason of such condition, to wit, a large rut or hole in said roadbed, and defective and improperly laid rails, tracks and switches, the truck in question became unmanageable and ran into plaintiff.

The evidence for plaintiff would amply have supported a finding that the rut was four feet long and six inches deep, and was on both sides of the rail. As one of the witnesses expressed it, "the track laid in the hole;" "the whole switch * * * looked as if it was right in the hole."

This is sufficient statement of facts for a consideration of the nonsuit as to the bottling company, whose liability must turn on the question whether its driver was under any duty of care to observe defects in the roadway that would be likely to interfere with the normal operation of the piece of machinery that he was driving; or was negligent in losing control because his wheel entered the rut, or in failing to regain control in time to avoid injuring the plaintiff. That he was required to use reasonable care for his own safety, and that of the property entrusted to him, is obvious; and whether in the exercise of such care he should have observed the rut and avoided it would be a question for the jury. There is, of course, no absolute duty on the part of one using the highway to observe defects and obstructions therein, but the duty exists of making such observation as the circumstances of the case reasonably require, and this is a question

for the jury. *Durant* v. *Palmer,* 29 *N. J. L.* 544, 548; *Houston* v. *Traphagen,* 47 *Id.* 23.

In *Morhart* v. *North Jersey Street Railway Co.,* 64 *N. J. L.* 236, 239, we said: "A passenger along a public highway * * * may *to some extent* rely upon the public way being preserved safe for passage. Whether, in respect to such occasional and unusual obstructions (as a hose stretched across the street) the passenger has exercised due care in observing and avoiding them must generally be a question for the jury." It is proper to add that an obvious or clearly visible defect in the roadway is not an occasional or unusual obstruction, but rather a natural and normal thing for a driver to look out for, and if a jury might find such driver negligent in failing to see such an unusual obstruction as the hose in question, *a fortiori*, would it be justified in such a finding in the case of a wide and deep rut in the smooth pavement, not to mention the other inferences of negligence in operation that the jury might draw from the fact that after striking the rut, the driver lost control of the steering gear as well as of the motive power of the truck and that it ran wild for a hundred feet or so, turned a corner, and was brought up on the sidewalk. Such an occurrence in a crowded city street is certainly not what would be expected in the normal operation of a truck by a reasonably careful driver, and might well raise an inference of negligence either by reason of insufficient control before the rut was encountered, or in failure to regain control promptly after it was encountered, or both, quite irrespective of possible negligence in running into it.

A similar duty would arise in favor of another person upon or near the street and who would sustain injury as the natural and probable consequence of a negligent failure to observe the obstruction, or to have proper control of the vehicle before or after striking it. Thus, if the driver of a horse-drawn vehicle carelessly collide with another vehicle, or a post at the curb, and his horse, startled by the crash, runs away and injures a pedestrian or wagon, a clear case for a jury would be presented on the question whether the

driver used due care in observing and avoiding the vehicle or post, and whether want of due care caused the injury. A similar duty to a passenger was relied on in *Rodenburg* v. *Clinton Auto, &c., Co.,* 84 *N. J. L.* 545; affirmed, 85 *Id.* 729, where the driver of an automobile tried to pass through a narrow space in the street. In the still more recent case of *Matheke* v. *United States Express Co.,* 86 *Id.* 586, where there was such consequential injury to the plaintiff because the driver of an express wagon did not observe a scaffold suspended from an elevated railroad structure, the reversal was based on the sole ground that reasonable care did not require a lookout for unusual structures up in the air, to the detriment of observing what were therein called the normal incidents of surface travel.

The distinction between that case and the case at bar arises out of the difference between the condition of the surface of the highway due, in part at least, to its ordinary use, and naturally discoverable by a reasonably, attentive driver or chauffeur who is "looking where he is going," and an overhead obstruction that forms no part of the highway and is discoverable only by a corresponding distraction of the driver's attention.

Bearing in mind the heavy and severe use of city streets, and the damage that may be done by such a ponderous machine as an auto truck when moving without control, and the common knowledge that ruts are liable to be and constantly are worn in every pavement and hence are to be expected, and that it is, or should be, habitual with every driver, as in the Matheke case, to "look where he is going," a jury would have been entitled to take the view that some reasonable observation of the roadway just ahead of this driver was required by proper care, and that such observation would have disclosed the rut in time to avoid or prepare for it; and that such duty existed in favor of all who would naturally be injured by a failure therein.

We conclude that the nonsuit as to the bottling company was erroneous.

There was error also in the granting of a nonsuit as to

the traction company.  The trial judge deemed the case to be controlled by our decision in *Fielders* v. *North Jersey Street Railway Co.,* 68 *N. J. L.* 343.  But an essential element was absent from the Fielders case which the jury might have found existent in the case at bar.  We said in that case (*pp.* 345, 346) :  "There is nothing in the case to show that * * * the defect resulted from any act of commission on the defendant's part.  Nor is there anything to connect the defect with the defendant's rails or sleepers, or to show that anything done or omitted in the construction, maintenance or operation of the railway produced the defect.  The location of the hole between the rails is a mere circumstance without causative significance."

An examination of the evidence now before us indicates a clear jury question on the very situation declared in the above quotation to be non-existent in the other case.  Some extracts from the testimony of the city engineer are sufficient to elucidate this point.  He said there was a rut or depression in the asphalt about twice as wide as the rail, and that the rail was immediately in the depression of the asphalt; that it had been there about two years, and had been caused by wearing away of the asphalt due to continuous traffic; that the rails offered more resistance than the asphalt, and the wagons turning in and out and crossing it would wear it out.  The rail was a grooved rail and likely to wrench wagon wheels, being more prominent than a flat rail; that in view of the construction adjacent to the switch, it would undoubtedly have a tendency to throw wheels off.  The pavement had been worn away from the steel work of the switch, for a distance of three to six inches  * * *  the head of the rail was exposed unnaturally, and the hole was about the depth of the asphalt and wearing right down into the concrete.

Apart, then, from the obligation of the company to maintain this part of the pavement pursuant to the franchise ordinance proved in the case, and apart from any question whether the ordinance was intended for the benefit of the traveling public or only as requiring a contribution to the

public expense of maintaining the roadway (which was the crux of the Fielders case), the jury had a basis for finding that as a result of the character of the construction of the traction company's track and switch at that point, there had been an unusual and excessive wear to the surface of the street, to which the hole or rut in question was due.

It has been held elsewhere that as a matter of common law a street railway company is liable for injury caused by projection of its rails above the street surface resulting from the ordinary wearing away of the surface under general traffic. *Groves* v. *Louisville Railway Co.,* 109 *Ky.* 76; 52 *R. A.* 448. We are not ready to declare so stringent a rule, and indeed, the recent case of *Johnson* v. *Public Service Railway Co.,* 83 *N. J. L.* 647, is generally to the contrary. But in that case, as in the Fielders case, the question of liability for a condition due to "construction, maintenance or operation of the railway" was expressly reserved, with a rather plain implication that in such case liability would exist. Such is the posture of the case at bar. We need not go at length into the decisions, most of which will be found in the note to *Groves* v. *Louisville Railway Co., supra,* as well as in 27 *Encycl. L.* (*2d ed.*) 93, 94, and many of which embrace the element of obligation by statute, ordinance, or contract, to keep the street surface in repair. Apart from this, we consider that when a street railway company adopts such a construction of its roadbed, rails, or switches as will normally cause an excessive wear on adjoining parts of the highway, it is under a duty of reasonable care to guard against such excessive wear creating a dangerous condition in such highway, and if such care be not used and an accident result which might reasonably have been anticipated, the company is *prima facie* liable therefor.

In the case at bar the jury might lawfully have found that the rut in question was due to the effect of the structure of defendant's railway on ordinary traffic; that it had been there so long as to charge defendant with notice of its existence, and that a heavy auto truck whose front wheel should run into the rut would be likely to swerve or slew out of its

course and do damage. In this aspect, therefore, there was a case for the jury. It is true that the evidence indicates that the switch and track were of standard design and construction. Assuming this, it was not the appliances themselves, but the condition of the roadway due to their presence and cumulative influence through an extended period of time, that caused the injury.

Let the judgment be reversed as to both defendants to the end that a *venire de novo* be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS, JJ.  14.