## DYER COUNTY *v.* RAILROAD.

### (*Jackson.*    May 28, 1889.)

1. RAILROADS.  *Repairs at crossings.*

Where a railroad crosses a public road already in use, the railroad company and its successors must, if not relieved by statute, not only restore the public road but erect and *maintain perpetually* all structures and keep up all repairs made necessary by such crossing, for the safety and convenience of public travel.

(See now Acts 1889, Ch. 119.)

Case cited and overruled: Railroad *v.* State, 16 Lea, 300.

Cited and distinguished: Railroad *v.* Parker, MS.

Cited and approved: Railroad *v.* State, 3 Head, 522; 46 Md., 445; 49 Md., 269; 67 Ill., 118; 23 Wend., 446; 133 Mass., 185; 50 N. Y., 203; 2 Am. & Eng. R. Cases, 487; 30 N. Y., 212; 31 Ohio St., 338.

2. SAME.  *Same.    Charter.*

Railroad charter, providing that the company shall construct its track across roads, highways, etc., "so as not to interfere with the free use of the same, and in such manner as to afford and leave in good repair and well constructed for public use all such roads, highways, etc., and shall restore the road or highway thus intersected to its former good condition, or in a sufficient manner not to have unnecessarily impaired its usefulness," does not exempt the railroad company from its common law obligation to maintain perpetually a bridge over the road, made necessary by the crossing, but rather declares and enforces that obligation.

Case cited and overruled: Railroad *v.* State, 16 Lea, 300.

Cited and approved: 51 Me., 313; 39 Me., 119; 75 Ill., 524; 67 Ill., 188; 49 Md., 257; 39 N. W. R., 153; 22 Conn., 74; 42 Conn., 175; 45 Penn. St., 135; 14 East, 317; 13 East, 220; 3 M. & Sel., 526.

3. SAME.  *Same.    County may make repairs and recover the cost.*

When the railroad company fails or refuses to perform its duty touching structures and repairs at its intersection with a public road, the county having the work done can recover the reasonable cost thereof.

4. SAME. *Same. Injunction.*

But when the crossing is in good condition, and there is nothing to indicate that the railroad company will refuse to discharge its duty in the future, the Court will not grant mandatory injunction to compel the company to make future repairs.

5. RES ADJUDICATA.

Acquittal of the railroad company of the criminal charge of maintaining a nuisance in the public road at its crossing is not available, as *res adjudicata,* in a suit by the county to recover of the railroad company the costs of removing the obstruction constituting the nuisance.

FROM DYER.

Appeal from the Chancery Court of Dyer County. H. J. LIVINGSTON, Ch.

LATTA & RICHARDSON and MARSHALL & WATKINS for County.

HOLMES CUMMINS and PARKS & DRAPER for Railroad.

CALDWELL, J. In the construction of its road through Dyer County some years ago, the Paducah and Memphis Railroad Company made a deep cut in a hill over which the public road from Dyersburg to Trenton ran, and at the point of intersection erected an overhead bridge across the cut for the use of persons traveling upon the public road. After ten or twelve years of use by the pub-

lic the bridge fell into decay, became dangerous, and was taken down. In the meantime the defendants in this cause became the successors of that company, and took charge of its road. They failing and refusing to replace the bridge, Dyer County was forced, by public necessity, to rebuild it, at the cost of several hundred dollars. To recover that sum, and to obtain a mandatory injunction requiring the defendants to keep the bridge in repair in the future, this bill was filed.

Complainants contend that the general law and the charter of the original company devolved upon it and its successors the duty not only of *constructing* the said bridge when the railroad was built, but also the duty of *maintaining it in the future;* while the defendants insist that the *whole obligation* so imposed *was discharged.* by the erection of the bridge in the first instance.

It is a well-settled rule of the common law, resting upon the most obvious considerations of fairness and justice, that where a new highway is made across another one already in use, the crossing must not only. be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safety. of the crossing must be *erected and. maintained* by the person or corporation constructing and using the new way. *Northern Central Railroad Company* v. *City of Baltimore,* 46 Md., 445; *Eyeler* v. *County Commissioners,* 49 Md., 269; *People* v. *C. & A. R. R. Co.,* 67 Ill., 118; *Dygert* v. *Schenk,*

23 Wend., 446; 1 Thompson on Negligence, 328 and 343.

The same principle, though not so fully stated, was recognized and applied by this Court in the case of the *Louisville and Nashville Railroad Company* v. *The State*, 3 Head, 522.

That such is the undoubted rule of the common law is fully conceded by the learned counsel of the defendants in argument before this Court, the contention being that the charter under which defendants operate their road relieves them from the duty of *maintaining* the bridge, after having once constructed it in an acceptable and proper manner.

That part of the charter relating to this question appears in the fifth clause, which is as follows:

"*Fifth.*—To construct their road and branches across any stream of water, water-course, road, highway, or railroad, so as not to interfere with the free use of the same, and in such manner as to afford and leave in good repair, and well constructed for public use, all such streams of water, water-courses, roads, highways, streets, and alleys, and shall restore the stream of water, road or highway, street or alley, thus intersected to its former good condition, or in a sufficient manner not to have unnecessarily impaired its usefulness or injured its franchises." Acts 1857-8, Ch. 42, Sec. 49.

Clearly, there is no *express* diminution of the company's common law obligation to be found in this provision; nor do we think there is any thing

in the language used to authorize an *inference* that
the Legislature intended to diminish that obligation
in the least degree.

This view of the charter, without more, would
leave the full measure of the common law respon-
sibility resting upon the company; but we are
constrained to go further, and, upon a construction
of the language of the charter, hold that it not
only does not excuse the company from the con-
tinuous duty of maintaining the bridge in a good
and safe condition, but unquestionably enforces that
obligation.

The requirement that the railroad shall be so
constructed as not to interfere with the free use
of the public highway, and that the latter, at the
point of intersection, shall be restored to its former
good condition, so as not to impair its usefulness
unnecessarily, implies and carries with it the obli-
gation *to keep* such highway in that same state of
repair and usefulness.

The requirement, so construed, is both reasonable
and just, and may well be said to be an embodi-
ment of the principle that one must so use his
own rights as not to take away or injure the
rights of others.

There was no good reason why the common law
burden of maintaining the bridge should be shifted
from the railroad company and cast upon the
county, when the former and not the latter was
to reap the fruits of the road whose construction
alone made the bridge a necessity; but, on the

contrary, there was the best of reasons for requiring the company to bear all expenses necessary in constructing and *keeping up* the crossing, as we hold the Legislature, in fact, intended, so that the county would be injured as little as possible, and have no greater burden imposed upon it in maintaining its public highway than it would have had if the railroad had never been constructed at all. Or, to state the same proposition a little differently as applied to the facts of this case, it was contemplated and intended that the county should · be saved harmless so far as could be, and yet permit the railroad to cross her highway in such manner and at such place as might be necessary to the due exercise of the powers and the enjoyment of the franchises conferred upon it by the Act.

The construction we have given this charter is the same as that placed upon similar charters and statutory provisions by the Courts of last resort in many of the States, and is sustained by the current of authority. *Willcome* v. *Leeds*, 51 Me., 313; *Veazie* v. *Railroad Company*, 39 Me., 119; *Railroad Company* v. *Moffitt*, 75 Ill., 524; 67 Ill., 188; 49 Md., 257; *State ex rel.* v. *Minn. & St. L. Ry. Co.* (Minn.), 39 N. W. R., 153; *Nicholson* v. *Railroad Company*, 22 Conn., 74; *Burritt* v. *City of New Haven*, 42 Conn., 175; *Phœnixville* v. *Phœnix Iron Company*, 45 Penn. St., 135. See also, to same effect, *The King* v. *Inhabitants of Lindsay*, 14 East, 317; *Rex* v. *Inhabitants of Kent*, 13 East, 220; *Rex* v. *Kenison*, 3 M. & Sel., 526.

The text writers, so far as we are advised, treat this as the settled rule of construction. Says Mr. Pierce:

"The laying of a railroad across highways often requires excavations and erections, and a greater or less change in the surface. The duty, however, to restore the highway, as far as may be, to its former condition, and to erect and *maintain* structures necessary for such restoration, is presumed to be incumbent on the company, *even without any express requirement imposed by statute.*" Pierce on Railroads, 245.

In speaking of the usual requirement that the railroad company shall restore the highway which it crosses to its former state so as not to impair the latter's usefulness, Mr. Mills remarks: "The word 'usefulness' implies capabilities for use, and appertains to *the future* as well as the present." Mills on Eminent Domain, Sec. 198.

"But such crossings and places so occupied are to be restored by the railroad company to as passable condition, *and so kept,* as is consistent with the use thereof by the railroad company." 1 Rorer on Railroads, 456 and 554.

Mr. Wood says:

"If the statute simply provides that the company 'shall restore the highway to its former state of usefulness' etc., they are invested with a discretion in the matter, *    *    * and are also charged with the further duty of *keeping* that part of the highway in proper condition." 2 Wood

on Railway Law, 976–7, citing 'Cooke v. Boston &amp;
Lowell R. R. Co., 133 Mass., 185, and other cases.

The same author says, on page 958 of same
volume:

"The right to lay a railway track in a public
street or highway carries with it the obligation
not only to lay it in a proper manner, but also
to keep it in repair," citing Worster v. Street R.
R. Co., 50 N. Y., 203, and Kellinger v. Same, Ib.,
206.

Under the head, "When private person or cor-
poration bound to repair," Mr. Thompson says:

*     *     *     "The books afford many illustra-
tions of this rule. Thus, a person or corporation
cuts a canal or mill race across a highway. He
or it must bridge the same in a substantial manner,
and keep the bridge in safe repair." *     *     *
So the owner of a railway crossing the highway,
must restore the highway, by a bridge or other-
wise, and, if a bridge, must keep the bridge in re-
pair, or pay to any person the damages flowing
from this neglect. 1 Thompson on Neg., p. 343,
Sec. 5.

"Private corporations generally, canal companies,
railway, and other private corporations, are bound
to repair all bridges erected by them, under their
charters, over public highways, especially where a
revenue is derived from them." Am. &amp; Eng.
Ency. of L., Vol. 2, p. 556, and cases cited.

Again, "where a public company, as a navi-
gation company, under powers conferred by the

Legislature, destroyed a ford and substituted a bridge, it was held that they were liable to keep the bridge in repair. So, too, where such company cut through a highway, rendering a bridge necessary to convey the highway over the cut, the company are bound to keep such bridge in repair." 1 Redfield on L. of R'ys., (3d Ed.) p. 404, Sec. 110. Same rule as to railways, in England, is stated by same author on page 399, Sec. 108, Subsec. 8.

Upon very much the same principle it has been decided in Illinois that where one railroad company condemns a right of way across the right of way of another railroad company, the amount recoverable by the latter from the former, as compensation for the property taken, should include "a sum sufficient to erect *and maintain perpetually* a bridge," rendered necessary by an excavation made under the tracts of the latter by the former. *St. L. J. & C. R. R. Co.* v. *S. & N. W. R. R. Co.*, 2 Am. & Eng. R. R. Cases, 487.

Some of the cases go even further than we are called upon to go in this case, and hold that the duty to maintain the crossing of the highway is not only a continuous one, but that it also binds the company making it to enlarge and extend the bridge, or crossing, originally made, if, by increase of population and public travel, it becomes inadequate. *Cooke* v. *B. & L. Ry. Co.*, 10 Am. & Eng. R. R. Cases, 328; *Manley* v. *St. Helen's Con. & Ry. Co.*, 2 H. & N., 840; *English* v. *N. H. & N.*

*Co.*, 32 Conn., 241; 42 Conn., 174; 1 Redfield on L. of R'ys, p. 538, Sec. 132.

The Courts, in a few of the States, seem to have adopted a different rule of construction, and decided that a railroad company which intersects a public highway has discharged its full obligation to restore the highway to its former state of usefulness when it has once constructed a suitable bridge, or crossing, and that it is not bound to keep it in repair. *Mo. R. R. Co.* v. *Long*, 27 Kansas, 684; *R. R. Co.* v. *Manser*, 21 Ohio St., 421; *Brookins* v. *R. R. Co.*, 48 Ga., 523.

This latter construction was adopted by this Court in the case of *Railroad Co.* v. *The State*, 16 Lea, 300, which was an indictment against the company for failing to keep in repair the very crossing involved in the present litigation. The decision in that case, however, was rested upon no other authority than that of the case of *E. T., V. & Ga. R. R. Co.* v. *Parker*, MS.

Though apparently going to the point for which it was cited, the facts of the latter case did not justify a decision of the question here involved. There it was sought to hold the company liable in damages for injuries claimed to have been received through the failure of the company to keep in repair "a small bridge built NEAR its road-bed," at the intersection of a public county road. The obligation of the company to maintain the crossing itself, or an overhead bridge, as in the present case, was not and could not have been author-

itatively considered or decided. So that the opinion in that case, so far as it is supposed to treat of the precise legal question now before us, is but *dictum*, and was not authority on the point for which it was cited in the 16th Lea case.

This being true, and believing, as we do, that the 16th Lea case is not supported by sound reason, and that it is contrary to the intention of the Legislature and the great weight of authority, we are constrained to overrule it as a precedent.

Since this litigation arose our Legislature has passed the following statute: " That all persons, companies, corporations, or syndicates owning or operating a railroad or railroads in the State of Tennessee be required to make and furnish good and sufficient crossings on the public highways crossed by them, and keep same. in lawful repair at their own expense." Acts 1889, Ch. 119, Sec. 1.

This opinion, however, is not in any sense or to any extent grounded upon that enactment, but it is based alone upon the common law and the charter construed.

Passing the construction of the charter, the defendants plead and rely upon the decision in the 16 Lea case as *res adjudicata*. The sufficiency of this defense does not depend, of course, upon the authority of that case as a precedent, but upon the altogether different consideration as to whether or not the question now involved was so adjudged as to be binding upon the complainant (Dyer County

and her Bridge Commissioners), and become a bar to this action.

Without discussing, or stating in detail, the well established rules by which the sufficiency of such a defense is to be determined, we are content to say, in brief, that it certainly is not made out in this case, because the parties in this and in the former litigation are not the same in fact or in privity of interest, and furthermore because an adjudication in a criminal prosecution is not a bar to a civil proceeding. 1 Greenleaf's Ev., Sec. 537; Milliken's Meigs' Digest, Sec. 1739, Subsec. 2; 2 Wharton's Law of Evidence, Sec. 776.

Then we hold that it was the duty of the defendants to replace the bridge in question, and that, having failed and refused to do so, they are liable to the county for the amount expended in replacing it for them. *Penn. R. R. Co.* v. *Irwin*, 85 Penn. St., 386.

That it may not be exactly the same structure in all respects that the defendants would have erected if they had undertaken the task on their own account cannot alter the fact of their liability, for the bridge is shown to be such as the necessities of public travel demand, and substantially the same as the one originally erected by the company, though slightly more to the convenience and advantage of the defendants.

What has been said of the obligation of the original company is intended to apply with like force to those defendants, for the duty imposed by

a charter in the first instance passes to and rests upon the successors to the first company. *People* v. *C. & A. R. R., Co.*, 67 Ill., 118; *Wasmer* v. *D. L. & W. R. R. Co.*, 30 N. Y., 212; *L. M. R. R. Co.* v. *Commonwealth*, 31 Ohio St., 338.

The bridge being now new and in good condition, and there being nothing in this record to indicate that the defendants will longer refuse to maintain it after this adjudication of their duty so to do, the mandatory injunction sought by the complainants will not be granted.

Let the decree of the Chancellor dismissing the bill be reversed, and decree be entered here in conformity to this opinion. The defendants will pay all costs.