## CITY OF HARRIMAN *v.* SOUTHERN RAILWAY CO.

(*Knoxville.* September Term, 1903.)

**RAILROADS.** **May be required to construct bridge over tracks under police powers, legislative act, and city ordinance.**

**A** mandatory injunction will be granted to compel a railroad to erect at its own expense a bridge or viaduct over its track at a public street crossing in obedience to an ordinance of a municipal corporation enacted under the power conferred upon it in its charter by the legislature, although the railroad tracks were laid before the street was laid out or the city was so incorporated, and the tracks were laid in a cut twenty feet below the grade of street crossing, where the public safety and necessity requires such bridge. The police power authorizes the requirement of such bridge.

Acts cited and construed: 1891, ch. 49.

Cases cited and distinguished: Dyer Co. v. Railroad, 87 Tenn., 712; Levee District v. Dawson, 97 Tenn., 172.

Cases cited and approved: People v. Railroad, 70 N. Y., 569; Inhabitants v. Railroad, 45 N. J. Eq., 436; Railroad v. Omaha, 66 N. W., 624, 41 L. R. A., 484; Railroad v. Willenburg (Ill.), 7 N. E., 698, 57 Am. Rep., 862; People v. Squire, 107 N. Y., 593; Railroad v. Chicago, 140 Ill., 309; Mugles v. Kansas, 123 U. S., 623; Railroad v. Chicago, 166 U. S., 255.

Harriman v. Railroad.

FROM ROANE.

Appeal from Chancery Court of Roane County.—
HUGH G. KYLE, Chancellor.

S. C. BROWN and R. B. CASSELL, for complainant.

H. N. CARR and JOUROLMAN, WELCKER & HUDSON, for
defendant.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

This bill was filed by the municipality of Harriman
to compel the Southern Railway Company by mandatory
injunction to build a bridge or viaduct across its main
track on Roane street where the latter crosses the track
of the railway twenty-two to twenty-four feet above the
grade. The bill alleges that complainant is a munici-
pal corporation; that the Southern Railway owns and
operates a line of road which runs through the corporate
limits of said city for a distance of one and three-
fourths miles; that among the enumeration of powers
granted complainant in its charter are included the
power to require railroad companies to construct at their
own expense bridges over their tracks where same cross
or extend along public highways or streets; that Roane

street crosses the track of defendant railway company at a point about midway between the main section of the city of Harriman and that part of said municipality known as "Walnut Hill," and at the intersection of said street with defendant's lines of railway in the city of Harriman there is, and has been for years, a bridge over defendant's railway track, which is located in a deep cut; the bridge has been in continual use for many years, and is the only means the public have of crossing the same in traveling said street, and is about twenty-two feet above the grade of the railroad; that said bridge is a public necessity, and the only means by which the public can cross said track in traveling said avenue; that the defendant railway company has been exercising ownership and control over said bridge, which is now in need of repairs, and has become in such condition that it is dangerous for the traveling public, and has been so since October 8, 1902; that in that condition of affairs, on October 13, 1902, the board of mayor and aldermen passed an ordinance requiring defendant company to build a new bridge at said point. The bill prays for a mandatory injunction to compel the erection of said bridge. An answer was filed by the company denying all the principal allegations of the bill. Proof was taken, and the chancellor decreed in favor of the complainant, granting the full relief sought. On appeal the court of chancery appeals affirmed the decree of the chancellor. Defendant has again appealed, and two assignments of error are filed:

Harriman v. Railroad.

First.   The court of chancery appeals erred in decreeing that complainant was entitled to the relief sought by the bill, and that the city of Harriman has authority under its charter to require railroad companies to construct bridges or viaducts over their tracks, and to require defendant railway company to construct a bridge over its tracks where Roane street is now located, and in granting a mandatory injunction requiring the Southern Railway Company to build a bridge over the railroad track upon Roane street in the city of Harriman, and in adjudging that defendant company pay the costs.

Second.   That the court erred in decreeing that the defendant company should construct a bridge, because there were no plans or specifications embodied in the ordinance in question, or accompanying the same.

The facts found by the court of chancery appeals are substantially as follows:

The city of Harriman was incorporated by an act of the Legislature passed March 2, 1891, approved March 6, 1891.   Acts 1891, p. 93, c. 49.   Among the powers conferred by the act upon the city it was given authority "to regulate the use of locomotive engines; to direct and control the location of cable and other railroad tracks; and to require the railroad companies to construct at their own expense such bridges and approaches, tunnels, or other conveniences at public crossings, and such viaducts and their approaches over their tracks where the same cross or extend along public highways or streets, and to put such streets in such condition and state of

Harriman v. Railroad.

repair as not to interfere with the free and proper use of said streets or crossings, as the city council may deem necessary; and where a viaduct or viaducts cross the tracks of such railroad companies, to compel them to build their portion of a continuous viaduct or viaducts over said tracks with their approaches; and to regulate the rate of speed of all railroad trains within the city, and their stops at said crossings."

That court further finds that ten years or more ago, when the city of Harriman was laid out, it projected what was known as Roane street or avenue across a deep cut twenty or twenty-four feet deep where the railroad tracks were laid. This street being convenient and important to the public in passing from one portion of the city to another, a bridge or viaduct was constructed over this cut by private subscription. It appears that the city of Harriman paid the contractor a balance of $30 due on his contract, which he was unable to collect from the subscribers. Since that time the city has made some repairs on the bridge, so as to make it safe, or reasonably safe, for the public to use it. The proof shows that at this time the bridge, on account of its aged condition, has become manifestly unsafe for use by the public. The city authorities demanded that the railroad company should build a new bridge at said point, or repair the old one so as to make it safe. Defendant company declined to make said improvement, claiming that it was not responsible for the existence of said bridge, nor for its condition, and hence was under no obligation to keep it in

repair or to build a new one to replace it.    To meet this exigency, the board of mayor and aldermen of the city on the thirteenth of October, 1902, passed the following ordinance:

"An ordinance to require the Southern Railway Company to construct at its expense a viaduct or bridge over its railway track where the same crosses Roane street or avenue in the city of Harriman, Tennessee:

"Section 1. That said Southern Railway be and is hereby required to construct at its own expense a viaduct or bridge over its railroad track where the same crosses Roane street or avenue in the city of Harriman, Tennessee.

"Sec. 2. That the said viaduct or bridge shall be built of good, sound material, and constructed in a substantial and workmanlike manner, with its middle line on the middle line of said street or avenue, at the usual or necessary height over said railway track, and shall have the necessary approaches the full width of the bridge, so as to put said street crossing in such condition and state of repair as not to interfere with the free and proper use of said crossing by the public.    Said viaduct or bridge shall be wide enough for a full roadway and footway thereon, properly separated by a suitable railing, and completed within sixty days from the publication and service of this ordinance.

"Sec. 3. That upon the passage and publication of this ordinance, the city clerk is hereby required to serve upon the agent of said Southern Railway Company at Harri-

man, Tennessee, a certified copy of this ordinance, and if, within sixty days thereafter, said company shall fail to construct said viaduct or bridge herein required, the city attorney is hereby directed to institute proper legal proceedings to enforce a compliance with this ordinance.

"Sec. 4. That all ordinances and parts of ordinances in conflict with this ordinance are hereby repealed, and this ordinance shall take effect from and after its publication, the public welfare requiring it."

The court of chancery appeals, through Judge Wilson, after an elaborate review of the authorities, reached the conclusion that: "It is competent for the State, in the exercise of its police power, to pass a law requiring railroads, whether existing or thereafter to come into existence, to build an overhead bridge where a public road, laid out by public authority to meet the convenience, necessity, or safety of the public, crosses its track, requires such erection. To hold otherwise is to say, it seems to the writer, that a railroad corporation, having located its road and put it into operation, is exempt from the duty of so using its franchise and property as to avoid injuring the property of others and endangering the lives and limbs of citizens. Otherwise expressed, it is to assert, in effect, the principle that if a railroad acquires a right of way, and constructs its railroad along it, and a population thereafter congregate in a given area on each side of its railroad, and organize under the law of the State a town or city, and lay off streets crossing its tracks necessary for the use and convenience of its citizens and

Harriman v. Railroad.

those dealing with them, the railroad cannot be compelled to do all that is reasonably necessary to protect the lives of the people using such crossing, and that, too, when the legislature of the State has expressly vested the power in the town or city to require it to do these things."

It will be observed from the facts found by the court of chancery appeals that the railroad was built and in operation many years before the city of Harriman was founded. At the place where Roane Street was afterwards located, the railroad ran through a deep cut, between twenty-two and twenty-four feet in height. The city of Harriman was chartered in 1891, and in laying off the city a number of streets were laid off crossing the railroad, one of them being Roane street.

Counsel for the company invoke the principle laid down by this court in *Dyer County* v. *Railroad,* 87 Tenn., 712, 11 S. W., 943, as follows:

"It is a well-settled rule of the common law, resting upon the most obvious considerations of fairness and justice, that where a new highway is made across another one already in use the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safety of the crossing must be erected and maintained by the person or corporation constructing and using the same."

It must be admitted that the rule thus laid down is

111 Tenn—35

an equitable one; but the present case must turn upon the construction of the charter powers of the city of Harriman, already mentioned, rather than upon any general principles of the common law or inherent rules of equity. It is conceded that the grant of authority from the legislature to the corporation of the city of Harriman is ample to compel railroad companies thereafter built and operating within the city to build bridges and viaducts, especially at grade crossings. But the controverted question in this case is whether such grant of power was intended, or is broad enough, to embrace railroads whose tracks were laid before the street was built or the town incorporated. It is insisted on behalf of the defendant company that this ordinance cannot be referred to the exercise of the police power, because it involves purely a matter of revenue. It is argued that the passage of the ordinance was not done for the regulation of railroads in the interest of public safety, but simply to onerate the railroad company with the burden of building a new bridge for the city. It is insisted that this ordinance was not passed because the crossing was in a populous part of the city, and on a much traveled thoroughfare, where the public safety demanded an overhead crossing, instead of a grade crossing. Hence, it cannot be referred, is the argument, to the exercise of the police power of the State. Counsel cite in support of this position Cooley on Taxation, as follows:

"The distinction between a demand of money under the police power and one under the power to tax is not

so much one of form as one of substance. The proceedings may be the same in the two cases, though the purpose is essentially different—the one is made for regulation, and the other for revenue. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case, and referring it to the proper powers. Only those cases where regulation is the primary purpose can be specifically referred to the police powers." *Levee District* v. *Dawson,* 97 Tenn., 172, 36 S. W., 1041, 34 L. R. A., 725.

Counsel affirm there was no allegation in the bill, and no finding by the court of appeals, that a new bridge was needed to avoid a dangerous grade crossing. In this statement counsel is in error. The bill alleges as follows:

"As before stated, said bridge is getting more dilapidated and dangerous each day, and it is now a public necessity that a viaduct or bridge be constructed on said Roane street or avenue over the defendant railway company's track at the point above mentioned, without further delay, or the public will suffer irreparable injury."

The court of chancery appeals on this subject finds as follows: That "when Harriman was laid out there was no necessity for a street at the point indicated, and where it crosses the railroad, but that the growth of the city since it was laid out has rendered said street a public convenience and public necessity, and that an overhead bridge at the point indicated is a public necessity,

as well as a proper means for protecting the lives of its citizens."

So we think that counsel for the company is in error in stating that the question presented by the city ordinance was purely a matter of revenue.

But we return to the question propounded whether a grant of power from the legislature can be employed to constrain the erection of bridges and viaducts by companies whose tracks were laid out prior to the incorporation of the municipality. In Thompson on Corporations, vol. 4, p. 5505, it is said as follows:

"The legislature may compel a railroad company to construct a bridge at the point of intersection of a railroad and turnpike so as to carry the turnpike over the railroad in a manner particularly specified, and it may do this although it may not possess a reserve power to alter or modify the charter of the railroad company; in other words, it may do it in the mere exercise of its police power." *People* v. *Boston R. R. Co.,* 70 N. Y., 569; *Inhabitants* v. *New York R. R. Co.,* 45 N. J. Eq., 436, 18 Atl., 242.

Again, the same author, in volume 2, p. 124, says as follows:

"Under a statute requiring railroad companies to construct and keep in repair suitable highway crossings, it was held to be the duty of the railroad company to make said crossings with approaches, notwithstanding the fact that the highway was laid out after the road was built."

In the case of the *Chicago, Burlington & Quincy Railroad Company* v. *City of Omaha* (Neb.), 66 N. W., 624, 41 L. R. A., 484, 53 Am. St. Rep., 557, the court said:

"The essential quality of the police power as a governmental agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the general public. It is one of the powers which has been reserved by the people of the State, and it cannot be surrendered to require persons and corporations to so exercise and enjoy their rights as not unnecessarily to injury others. That the principle stated is especially applicable to existing rights, without regard to the time of their acquirement, or to the source from whence they are derived, it appears to us a self-evident proposition not requiring argument," etc.

In that case it was said:

"The obvious purpose of the legislation in this case, both State and municipal, is to promote the convenience and safety of the public at a grade crossing, which is judicially recognized as a place of danger. It is, in short, the exercise of the governmental power and duty to secure a safe and necessary highway, and must be upheld, if at all, as a legitimate exercise of the police power of the State."

In the case of the *Illinois Central Railroad Company* v. *Willenburg* (Ill.), 7 N. E., 698, 57 Am. Rep., 862, it was said as follows:

"The point is made, however, that these provisions are not obligatory upon this corporation, because en-

acted many years since it received its charter from the State. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks and the construction of farm crossings thereupon of landowners are police regulations, in the strict sense of that term, and apply with equal force to corporations whose tracks are already built as well as to those thereafter constructed. They have reference to the public security for persons and property. No reason is perceived why, upon the same principle on which a railroad corporation may be required to fence its tracks and construct cattle guards, that it may not also be required to construct crossings."

In *People* v. *Squire,* 107 N. Y., 593, 14 N. E., 820, 1 Am. St. Rep., 893, it was held that an act requiring telephone and telegraph companies already in operation on the streets of cities of a certain size to put their wires underground was a legitimate exercise of the police power. Said the judge in that case: "The right to exercise this police power cannot be alienated, surrendered, or abridged by legislation, by any grant, contract, or delegation whatsoever, because it constitutes the exercise of a governmental function, without which it would become powerless to protect those rights it was especially designed to accomplish."

It has been held in numerous cases that "uncompensated obedience to a legislative enactment for the public safety under the police power of the State is not a taking or damaging, without just compensation, of private

Harriman v. Railroad.

property, or of private property affected by public interests." *Chicago & Northwestern R. R. Co.* v. *Chicago,* 140 Ill., 309, 29 N. E., 1109; *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct., 273, 31 L. Ed., 205; *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S., 255, 17 Sup. Ct., 592, 41 L. Ed., 979, and authorities there cited. In the latter case it was held that: "The expense that will be incurred by the railroad company in erecting grades, planking crossings, and maintaining flagman in order that its road may be safely operated—if all that should be required—necessarily resulted from the maintenance of the public highway, and must be deemed to have been taken into account when it accepted the privileges and franchises granted by the State. Such expenses must be regarded as incidental to the exercise of the police powers of the State." The ordinance adopted by the city of Harriman is based upon an estimate that the improvement will not exceed $200 or $300, and is in all respects reasonable. If the exercise of this power by the corporate authorities should be excessive or unreasonable, the courts have plenary jurisdiction to adjudge such ordinance void.

The decree of the chancellor and the court of chancery appeals will be affirmed.