ISAAC WIESENTHAL, PROSECUTOR, v. ATLANTIC CITY
ET AL.

Argued June 7, 1904—Decided June 1, 1906.

1. An ordinance providing for the purchase by a city of the prop-
erty of certain volunteer fire companies, where a considerable
number of the members of council who voted for the ordinance
were also members of one or more of the volunteer fire com-
panies and financially interested in the purchase, set aside as
contrary to the policy of the Crimes act. *Pamph. L.* 1898, *p.* 803,
§ 32. Following *Stroud v. Consumers' Water Co.,* 27 *Vroom* 422.

2. Where an ordinance to establish a paid fire department, and an
ordinance for issuing city bonds to pay for property for the use
of its fire department, were so closely related to an ordinance for
purchasing the property of volunteer fire companies as to render
it clear that the three ordinances were parts of a single plan, it
appearing that the personal interest of members of council in the
property to be purchased furnished an unlawful inducement to the
passage of all three ordinances—*Held,* that the first and second
ordinances should be set aside as well as the third.

On *certiorari.*

Before Justices FORT and PITNEY.

For the prosecutor, *Thompson & Cole.*

For the respondents, *Harry Wootton.*

The opinion of the court was delivered by

PITNEY, J. This writ of *certiorari* brings before us three
ordinances adopted by the city council of Atlantic City on
March 28th, 1904, respecting the fire department of the city,
and the proceedings of council leading up to the adoption
of those ordinances, and also certain proceedings of council
taken on April 4th, looking to the purchase from certain
volunteer fire companies of their property, real and personal,
and electing three persons as fire commissioners. The ordi-
nances in question are as follows: Ordinance No. 5 is en-

titled "An ordinance to establish, maintain, regulate and control a paid department in the city of Atlantic City." Ordinance No. 6 provides for the purchase of the property, real and personal, of eight volunteer fire companies in Atlantic City. Ordinance No. 7 authorizes the issue of $130,000 of fire department bonds of the city.

It was admitted upon the argument that Atlantic City, by a vote of the people, adopted the provisions of the act of April 3d, 1902. *Pamph. L., p.* 284. The case shows that prior thereto the fire department had been established under an ordinance passed December 11th, 1899, and consisted of such properly incorporated fire companies as accepted the provisions of the ordinance. At the time of the proceedings now under review there were nine companies in the department, some of which owned their fire houses and lots, and all of which companies, save one, owned their fire apparatus and sundry other personal property. These companies were known as volunteer fire companies, and together constituted what was called the volunteer fire department.

The three ordinances now in question were all introduced at a meeting of council held March 14th, and having been read a first time were referred to the ordinance committee. At a meeting of March 22d they were severally taken up, read a second time, considered by sections, amendments agreed to, and ordered to have their third reading. At the meeting of March 28th the three ordinances were passed. By Ordinance No. 5 it is ordained that there shall be a paid fire department, under the charge and control of a board of fire commissioners, to consist of three members. By one of its sections "the volunteer fire department in Atlantic City is hereby abolished, and the terms of office or employment of officers and employes of the said department, where said officers or employes shall have been appointed by the city council of Atlantic City, or by volunteer companies heretofore existing in said city, or by both, shall immediately cease and determine."

Ordinance No. 6, after reciting that the city is authorized by its charter, to wit, the act of April 3d, 1902, and a supple-

ment thereto, approved February 24th, 1904, to purchase all such property, real and personal, as may be necessary or proper for the use of its fire department, and that it is deemed advisable to purchase for fire department purposes the properties thereinafter mentioned, provides specifically for the purchase from eight several fire companies, at specified prices, amounting in the aggregate to $131,536, of the property, real and personal, of the companies, and that the purchase-money shall be paid out of the proceeds of fire department bonds of the city issued pursuant to the acts of 1902 and 1904.

Ordinance No. 7 authorizes the issue of $130,000 of fire department bonds "for the purpose of providing moneys to enable the city to purchase such property, real and personal, as may be necessary or proper for the use of its fire department," the bonds to be sold at not less than par, and the proceeds to be held by the city treasurer and paid out by him under the direction of the council.

The case shows that at the time of the proceedings under review the city council consisted of seventeen members, of whom eight were members of the volunteer fire companies and financially interested in the purchase of the property in question by the city. At the meeting of March 14th, when the ordinances passed their first reading, there were but fifteen councilmen present, among whom were the eight interested members. At the meeting of March 22d, sixteen members were present, including the eight thus interested. At the meeting of March 28th, fourteen members were present, including seven of the interested members. Five, at least, of the interested members participated in the vote upon final passage of each of the three ordinances. They likewise participated in the proceedings of April 4th, when a resolution was adopted for the purchase of the property of the several fire companies pursuant to Ordinance No. 6.

By section 32 of the Crimes act of 1898 (*Pamph. L., p.* 803), any member of the common council in any city who shall be directly or indirectly interested in furnishing any goods, chattels, supplies or property of any kind whatsoever

to or for the city, the contract or agreement for which is made or the expense or consideration of which is paid by the council of which such member is a part, is guilty of a misdemeanor.

It is entirely clear, and, indeed, is conceded, that under this statute, and the authority of *Stroud* v. *Consumers' Water Co.*, 27 *Vroom* 422, Ordinance No. 6, which provides for the purchase of the property of the fire companies, and the resolution of April 4th, for carrying that purchase into execution, must be set aside. The matter in debate is whether Ordinances Nos. 5 and 7 must fall for the same reason. As to No. 7, the question is hardly debatable. It is manifest that the only reason for issuing $130,000 of fire department bonds is to enable the city to pay the purchase-price of the property proposed to be purchased under Ordinance No. 6. As the purchase must be set aside, there is no present occasion for the issuing of the bonds, and it is entirely clear that without the unlawful inducement contained in No. 6, No. 7 would never have been adopted. These two ordinances are at least as closely connected together as were the two ordinances that were in question in the Stroud case.

We think Ordinance No. 5 must likewise be annulled. Its manifest purpose is to establish a paid fire department, with the use of the fire houses, engines, trucks, horses and other apparatus and personal property that were to be purchased under Ordinance No. 6, and at the same time to abolish the volunteer fire department, whose members owned that property. The three ordinances were parts and parcels of a single plan, as much so as if they had been combined in a single ordinance. The evidence convinces us that Ordinance No. 5 would not have been passed except for the personal interest of members of council in the property to be purchased under Ordinance No. 6, and that this purchase furnished an unlawful inducement to the passage of all three ordinances.

The proceedings under review will be set aside.