### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## EASTERN DIVISION.

### KNOXVILLE, SEPTEMBER TERM, 1923.

### CITY OF KNOXVILLE v. SOUTHERN RY. CO.

#### (*Knoxville.* September Term, 1923.)

1. **MUNICIPAL CORPORATIONS.** City could not require railroad to construct ramps on viaduct not required by public necessity.

A city could not require a railroad to construct ramps in connection with viaduct across tracks at crossing, where the construction of such ramps was not required by public necessity. (*Post, pp.* 307-309.)

2. **RAILROADS.** Invalidity of ordinance for construction of viaduct, in so far as it provided for construction of ramps, held to validate entire ordinance.

An ordinance, requiring railroad to construct and maintain viaduct over tracks at crossing with certain ramps, will not be enforced, in so far as it requires the construction of the viaduct without the ramps where that portion requiring construction of ramps is void, because the construction of the ramps is not required by public necessity, since its invalidity as to ramps invalidates the ordinance as a whole, it being entire and not severable. (*Post, pp.* 307-309.)

City of Knoxville v. Southern Ry. Co.

Acts cited and construed:   Acts 1907, ch. 207, sec. 15, subsec. 21.

Cases cited and approved:  L. & N. Railroad Co. v. State, 40 Tenn.,
  523;  Dyer County v. Railroad, 87 Tenn., 712;  Harriman v. Rail-
  road, 111 Tenn., 538;  Chattanooga v. Railroad, 128 Tenn., 406;
  Minneapolis v. Railroad, 98 Minn., 380;  Chicago, Milwaukee & St.
  Paul Ry. Co. v. Minneapolis, 232 U. S., 430;  Chicago v. Gunning
  System, 114 Ill. App., 377;  Ex parte Mayor & Aldermen of Florence
  (In re Jones), 78 Ala., 419;  State v. Webber, 107 N. C., 962;
  Canova v. Williams, 41 Fla., 509;  Wiesenthal v. Atlantic City, 73
  N. J. Law, 245.

---

## FROM KNOX.

---

Appeal from the Chancery Court of Knox County to the
Court of Civil Appeals, and by *certiorari* to the Court of
Civil Appeals from the Supreme Court.—HON. CHAS.
HAYS BROWN, Chancellor.

ROY H. BEELER, JOHNSON & COX and FRANTZ, McCON-
NELL & SEYMOUR, for City of Knoxville.

SMITH, WORD & ANDERSON and S. R. PRINCE, for South-
ern Ry. Co.

MR. JUSTICE HALL delivered the opinion of the Court.

The original bill in this cause was filed by the munici-
pality of the city of Knoxville against the Southern Rail-
way Company (an interstate railway corporation) to com-
pel it, by mandatory injunction, to construct and perpet-
ually maintain, at its expense, a bridge or viaduct over
and across its tracks on Broadway or Broad street in the
city of Knoxville, in accordance with the provisions of an

ordinance passed by the board of commissioners of said municipality on June 20, 1922, as shown by plans and specifications on file in the office of the engineer of said municipality; a general plan and specification of which was filed as Exhibit G to complainant's bill.

The ordinance, on which the relief sought is predicated, is as follows:

"An ordinance to require Southern Railway Company to construct and maintain at its own expense an overhead viaduct over and across its tracks on Broadway.

"Whereas, Broadway is and has been for many years a public street in the city of Knoxville; and

"Whereas, the Southern Railway Company has constructed and maintained for many years a number of railroad tracks across said Broadway at grade which said tracks are either owned or controlled by it or operated under lease from other railroad corporations; and

"Whereas, the growth of the transportation business of said Southern Railway Company is requiring greater and more constant use of said tracks by said Southern Railway Company in the operation of trains thereon, which increased use creates an inconvenient and dangerous hazard and risk to the life, limb and property of the citizens and residents of Knoxville using said Broadway as a street or highway; and

"Whereas, the growth and increase of population of said city is daily requiring the use of said Broadway by greater numbers of persons and vehicles which cross said tracks at grade at all hours of the day and night; and

"Whereas, the operation of trains of said Southern Railway upon its said tracks over Broadway at grade has become so inconvenient and unsafe to the public in its right-

ful use of said Broadway that the public welfare requires a separation of the crossing of said street and said railroad tracks:

"Now, therefore—

"Section 1. Be it ordained by the board of commissioners of the city of Knoxville that the public health, safety, convenience and necessity requires the construction and maintenance of a viaduct to carry the public travel and traffic over and above said Southern Railway Company's tracks on Broadway in the city of Knoxville.

"Section 2. Be it further enacted that said Southern Railway Company be and is hereby required at its own cost and expense to build and construct a viaduct and approaches thereto over and across its said tracks on Broadway in the city of Knoxville, said viaduct and approaches thereto shall be constructed the full width of said Broadway, including the sidewalks, and shall extend northwardly on and along Broadway from the point where the north line of Jackson avenue intersects the same on the east and the north line of Oak street intersects the same on the west to the point where the south line of Park avenue intersects Broadway on the east. Said Southern Railway Company shall construct said viaduct and approaches in accordance with the plans, profiles, specifications and data on file in the office of the engineer of the city of Knoxville: Provided further, that said Southern Railway Company shall construct and maintain at its own expense inclined approaches or ramps to connect Depot street with the proposed viaduct and shall also construct and maintain at its own expense an additional ramp or approach to connect McGhee street with the proposed viaduct.

"Section 3. Be it further ordained that said viaduct and approaches and ramps shall be of such design, material and construction as shown on the aforesaid plans, blue prints, specifications and data on file in the office of the engineer of the city of Knoxville and approved by the board of commissioners of the city of Knoxville, unless said Southern Railway Company shall within thirty days from the date this ordinance is passed submit plans, profiles, specifications and other data suggesting changes in or in lieu of the plans of the city engineer, whereupon said plans and specifications submitted by said Southern Railway Company if approved by the board of commissioners shall be and become the plans and specifications upon which said viaduct and its approaches thereto shall be constructed; Provided, however, that if within said thirty days said Southern Railway Company shall signify in writing to said board of commissioners in good faith its intention to comply with this ordinance and shall ask for an extension of time within which to submit plans and specifications for said viaduct and approaches, said board of commissioners may for good cause shown extend said time for a reasonable period, not, however, to exceed thirty days.

"Section 4. Be it further ordained that said Southern Railway Company shall within sixty days from the date this ordinance becomes effective commence in good faith to build said viaduct and approaches and to do said construction work with all practical despatch so that said viaduct shall be complete and open to public travel in the shortest practical time.

"Section 5. Be it further ordained that from and after the completion of said viaduct and approaches as herein

provided, it shall be the duty of said Southern Railway Company to perpetually maintain said viaduct and approaches in said condition of repair that the same shall at all times be reasonably safe and convenient for the use of the public.

"Section 6. Be it further ordained that immediately upon the passage of this ordinance the recorder of said city of Knoxville shall deliver to the agent of Southern Railway Company at Knoxville, Tennessee, a certified copy hereof and shall also mail by registered mail, postage prepaid, to Fairfax Harrison, president of said Southern Railway Company at Washington, D. C., a certified copy hereof and said recorder shall immediately submit to the board of commissioners of said city of Knoxville a certificate showing that he has complied with this ordinance.

"Section 7. Be it further ordained that if said Southern Railway Company shall fail to comply with this ordinance as hereinbefore provided, the board of commissioners of the city of Knoxville be and are hereby authorized and directed to at once institute and prosecute such legal proceedings as may be necessary and proper to compel said Southern Railway Company to comply fully with this ordinance.

"Section 8. Be it further ordained that this ordinance take effect seventeen days after its passage and entry at large on the minutes of the board, the public welfare requiring it."

The defendant railway company is the successor in title to the railroads, rights, and franchises of the old Hiwassee Railroad Company, which was chartered and organized under an act of the General Assembly of the

State, passed February 19, 1836 (Loc. Laws 1835-36, c. 3). Section 20 of that act is as follows:

"Be it enacted that wherever it shall become necessary in the construction of said road to cross or intersect any public road now or hereafter established by law, it shall be the duty of said company so to construct said road, as not to impede the passage or transportation of persons or property along the same."

The name of this railroad company was, by act of the legislature passed February 4, 1848 (Laws 1847-48, chapter 169), changed to East Tennessee & Georgia Railroad Company, and, pursuant to an act of the General Assembly of the State passed December 17, 1869 (Pub. Laws 1869-70, chapter 36), this railroad company was consolidated with the East Tennessee & Virginia Railroad Company under the name of the East Tennessee, Virginia & Georgia Railroad Company, and this railroad company was afterwards acquired by the Southern Railway Company.

It is alleged in the bill that at the time of the construction of the original line of railroad by the East Tennessee & Georgia Railroad Company in 1854 there was a street or highway at the point, or substantially at the point, now occupied by Broadway or Broad street in said city; that since said original track was constructed a large number of tracks have been constructed over and across said Broadway or Broad street by the Southern Railway Company and its predecessors in title until now some ten or twelve tracks cross said street at grade; that the Southern Railway Company's main line passes over said crossing, and, in addition, several other main lines of road, extending from Knoxville to Jellico, to Harriman, to and beyond Maryville, to Middlesboro, and to other

points, cross said track and connect with the Bristol to Chattanooga line of the Southern Railway Company at a point east of Broadway.

The bill further alleges, and it is shown by the proof, that all of the trains going from Knoxville to the large yards known as Coster yards north of the city pass over and across Broadway. In addition there is a large amount of local switching operations back and forth across Broadway; that Broadway is and always has been one of the main thoroughfares of the city of Knoxville, extending from the northern portion of the city to the southern portion thereof, and is and has for many years been a much traveled highway; the city being divided by the Southern Railway Company's line, about one-half thereof being on either side of its tracks.

The defendant railway company filed a demurrer to the bill, but its demurrer was overruled with leave to defendant to rely upon the same in its answer and upon the hearing of the cause on the merits.

Defendant then filed an answer, admitting the corporate capacity of the municipality, but denied that, under its charter, complainant had the power to compel defendant to build bridges, viaducts, or crossings to carry highways over its thoroughfares. While admitting that it was the successor in title to the rights and franchises of the Hiwassee Railroad Company, the East Tennessee & Georgia Railroad Company, and the East Tennessee, Virginia & Georgia Railroad Company, it denied that it was charged with the duty of constructing and maintaining bridges and viaducts over any of complainant's streets by virtue of the provisions contained in said charters.

It admitted the passage of the ordinance by the board of commissioners of the city, and service thereof upon it, and that it had refused and still refuses to comply therewith.

The answer denied that there was any public necessity for a viaduct or bridge on Broadway or Broad street, and the further defense was made that to require defendant to build a viaduct on Broadway or Broad street would be an undue burden upon interstate commerce; and that the board of commissioners of the city was without power to pass the ordinance requiring defendant to build said viaduct; and that the courts were without power to enforce it.·

Certain amendments were subsequently made, both to the bill and to the answer. These amendments relate to the construction of the ramps on McGhee street and on Depot street, and will hereinafter be more specifically referred to in the course of this opinion.

A large volume of proof was taken in the cause upon the questions of fact presented by the pleadings, and, the cause coming on to be heard before the chancellor upon the record at large, a decree was passed granting complainant the relief sought and requiring defendant to build said viaduct in accordance with the provisions of said ordinance; the chancellor being of the opinion that the duty to build said viaduct rested upon it under section 20 of the charter of the old Hiwassee Railroad Company, whose rights and franchises had been acquired by defendant.

From the decree of the chancellor defendant appealed to the court of civil appeals. That court reversed the decree of the chancellor, and dismissed complainant's bill; holding that, while the proof sustained the recitals of the

preamble, and the declaration of section 1 of the ordinance of June 20, 1922, to the effect that the public safety, convenience, and necessity required the separation of the grades of defendant's tracks and Broadway or Broad street by the construction of a viaduct over said tracks, complainant was without power, either under its charter or the charter of the Hiwassee Railroad Company, or the common law, to compel defendant to build and maintain, at its expense, said viaduct, and that the ordinance of June 20, 1922, was void because of such lack of power on the part of complainant.

The court of civil appeals further held that the decree of the chancellor requiring defendant to build the viaduct with the McGhee street ramp, as provided by the ordinance, was erroneous, because of complainant's solemn admission, in an amendment to its original bill that there was no public necessity for the McGhee street ramp; the proof showing that the construction of the McGhee street ramp would cost defendant many thousands of dollars, and to require it to expend such a sum of money in the construction of said ramp, without any public necessity therefor, would amount to the taking of defendant's property without due process of law.

The cause is now before this court upon writs of *certiorari* sued out by both complainant and defendant and for review.

Complainant complains of the judgment of the court of civil appeals in so far as it adjudged that complainant was without power, either under its charter or the charter of the Hiwassee Railroad Company or the common law, to compel defendant to build and maintain, at its expense, the viaduct in question; and in adjudging that the

building of the McGhee street ramp was not necessary to the public convenience and safety; and in holding that the leaving off of the McGhee street ramp would be a material variation from the ordinance.

Defendant by its assignments of error insists that the court of civil appeals committed error in not holding that the ordinance upon which complainant's bill was predicated was void because the property rights of abutters on said Broadway, consisting of the easement of access to the street, would be taken without compensation therefor being paid or provided for contrary to the provisions of our Constitution and for this reason, if for no other, the bill should have been dismissed.

This was also one of the defenses set up by defendant in its answer to the bill.

It is also insisted by defendant under its second and third assignments of error that the court of civil appeals erred in not holding that Congress had, by the Interstate Commerce Act, as amended by the Transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, section 10071¼ et seq.), given jurisdiction to the Interstate Commerce Commission in the field of such an expenditure as is herein sought to be placed on an interstate carrier, and that the field being thus occupied, the State is without jurisdiction in the premises, and for this further reason complainant's bill should have been dismissed.

It is contended by complainant that the duty rests upon the defendant, not only at common law but by reason of its charter to maintain the crossing in question in a safe condition; that there is an implied common-law power in the city growing out of its general police power expressed in subsection 21 of section 15 of its charter, to require that duty to be performed by defendant.

The charter of complainant, which was in effect at the time the ordinance in question was passed and the present bill was filed, is chapter 207 of the Acts of 1907, and by subsection 21 of section 15 of that act it is provided that the mayor and aldermen shall have power "to pass all ordinances necessary for the health, convenience, and safety of the citizens, and carry out the full intent and meaning of this act, and to accomplish the object of the same."

Complainant cites, in support of its contention that defendant is obligated under the common law to construct whatever structures may be reasonably necessary to the convenience and safety of the public at the crossing in question, the rule announced in the following cases: *L. & N. Railroad Co.* v. *State*, 3 *Head*, 523, 75 Am. Dec., 778; *Dyer County* v. *Railroad*, 87 Tenn., 712, 11 S. W., 943; *Harriman* v. *Railroad*, 111 Tenn., 538, 82 S. W., 213; *Chattanooga* v. *Railroad*, 128 Tenn., 406, 161 S. W., 1000; *Minneapolis* v. *Railroad*, 98 Minn., 380, 108 N. W., 261, 28 L. R. A. (N. S.), 298, 120 Am. St. Rep., 581, 8 Ann. Cas., 1047; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minneapolis*, 232 U. S., 430, 34 Sup. Ct., 400, 58 L. Ed., 671, and the cases there cited.

Owing to the view we take of the instant cause, it is unnecessary to analyze the cases relied on by complainant in support of its contention and determine whether or not complainant had the power under its charter as it then existed, to require defendant to build and maintain a viaduct over the crossing in question, or whether or not the duty rested on the defendant by reason of the provisions of its charter or under a rule of the common law.

We think the judgment of the court of civil appeals necessarily must be affirmed upon another ground; it appear-

ing that any difficulty that may have been in the way of complainant to the relief sought by the ordinance involved in this cause has apparently been removed by the new charter of the city of Knoxville, passed by the General Assembly of the State at its 1923 session, and after the ordinance involved was passed, which act became effective on October 1, 1923 (Priv. Laws 1923, chapter 412). Subsection 41 of section 5 expressly empowers the city—"to require and compel any steam railroad company operating within said city, and crossing with its lines any of the streets of the city, to build and construct and forever maintain all necessary bridges, viaducts, and 'underpasses over and under the tracks of said steam railroad company wherever said track or tracks cross the public streets, alleys, ways and thoroughfares of said city, when, in the judgment of the legislative body such bridge, viaduct or underpass should be built or constructed for the preservation and protection of the public using such streets, alleys, ways and thoroughfares; and the entire cost of so constructing such bridge, viaduct or underpass shall be borne and paid by the person, firm or corporation holding or maintaining and operating such steam railroads."

We think the ordinance passed by the board of commissioners on June 20, 1922, requiring defendant to construct and maintain at its expense the viaduct in question, is void, and cannot be enforced for the following reasons: The ordinance required ramps on Depot street and a ramp on McGhee street to connect said streets with the proposed viaduct. It was further provided by section 3 of the ordinance that said viaduct and ramps should be of such design, material, and construction as shown on the "foresaid plans, blue prints, specifications, and data on file in

the office of the engineer of the city of Knoxville and approved by the board of commissioners of the city of Knoxville, unless said Southern Railway Company shall within thirty days from the date this ordinance is passed submit plans, profiles, specifications and other data suggesting changes in or in lieu of the plans of the city engineer," etc.

The plans on file in the city engineer's office which are referred to in the ordinance and duly approved by the board of commissioners, did not provide for a ramp on McGhee street. The original bill prayed that defendant be required to build the ramps on Depot street, but did not ask for one on McGhee street.

It appeared from the testimony that the construction of the ramp on McGhee street was not necessary to the public interest. With the record in this situation defendant was permitted to file an amended answer, which, among other things, pointed out the variance between the ordinance and the bill; that is, that the ordinance required a ramp on McGhee street, while the bill prayed for the building of the viaduct without a ramp on McGhee street.

Thereupon complainant amended its bill, alleging that, although the ordinance provided for the building of the viaduct with certain ramps including a ramp on McGhee street, neither the ramp on McGhee street nor the two ramps on Depot street were necessary parts of the structure, but were simply incidental thereto for the purpose of providing approaches to said viaduct on said streets; that complainant had determined that the ramp on McGhee street was not necessary to the public interest, and therefore it would probably be unfair to tax defendant with the expense thereof, as it would add considerable extra expense

in construction, and that the present plans, upon which complainant was insisting, did not contemplate the building of any ramp extending from said viaduct to McGhee street. Complainant denied that the building of said McGhee street ramp was and is an essential part of the plans of said viaduct, or that it is and was an essential part of said ordinance.

To this amendment defendant filed its answer, insisting that it could not legally be required to construct a viaduct which differed in any material manner from that required by the ordinance and that the bill as amended sought relief which was not in accordance with the ordinance; in fact, the ramp on McGhee street was omitted from the plan.

Thereupon complainant again amended its bill, alleging as follows:

"By the original ordinance passed in this case it was provided for the building of ramps or approaches to the Broadway viaduct from said viaduct to Depot street and McGhee street. Afterwards the officers of the complainant concluded that the public necessity could be properly subserved by leaving off the ramp on McGhee street so that complainant's exhibits with the original bill did not provide for a ramp at said point. Afterwards, however, the defendant objected to the building of the structure upon the ground that it was a departure from the ordinance, in that it was not required to build the McGhee street ramp, and during the progress of the trial in this case they announced that they proposed to make a motion to require the complainant to elect as to what structure it would require the defendant to build, whether the viaduct proper, or the viaduct with the Depot street approaches, or the viaduct with the Depot street approaches and the

McGhee street approach. Thereupon the complainant in open court elected to require the same company to build the structure as provided in the ordinance; and it now produces and files as Exhibit A amended plans and specifications for said ramp on McGhee street, and asks that the said railway company be required by mandatory injunction to build the viaduct, including the two ramps on Depot street and the ramp on McGhee street, according to the original plans filed with the bill, the amendments thereto made on, to-wit, May 16 and 17, 1923, and the Exhibit A hereto attached, being the viaduct proper from Jackson avenue to Park avenue, and in addition thereto approaches and ramps to reach same, to-wit, two ramps on Depot street and one on McGhee street.

"It adopts the prayer of its original bill, and prays for general relief."

Amended plans and specifications were filed as Exhibit A to the second amendment to the bill as stated therein.

As before stated, the court of civil appeals was of the opinion that the decree of the chancellor requiring defendant to build the viaduct with the McGhee street ramp was erroneous, because of the solemn admission by complainant in its amendment to the original bill that there was no public necessity for the McGhee street ramp. The proof shows that it would cost defendant to construct this ramp at least $50,000, if not an amount in excess of that sum, and, of course, defendant could not be required to construct such ramp; it appearing by the unequivocal admission of complainant that there is no public necessity for its construction.

It will be noted that the ramps on Depot and McGhee streets are required by the ordinance to be built in con-

nection with the viaduct. The city eliminated them in their pleadings and proof because there was no public necessity for their construction, and contended that they were not really essential parts of the structure itself.

The chancellor directed that both ramps be built upon the theory that they were essential and necessary parts of the ordinance. We think the chancellor was correct in holding that they were necessary parts of the ordinance, but was incorrect in holding that they could be required in the face of the admissions in complainant's bill as amended and the proof. The ordinance sought a single object, and that was the building of a viaduct with ramps on Depot street and a ramp on McGhee street. The provisions of the ordinance were not severable but entire, and the scheme of improvement therein provided for was entire, and if a material part of the ordinance cannot be enforced, then no part of it is enforceable.

"The rule is well settled that municipal ordinances, like statutes, may be valid in some of their provisions and invalid as to others. Where the portion of an ordinance which is invalid is distinctly separable from the remainder, and the remainder in itself contains the essentials of a complete enactment, the invalid portion may be rejected, and the remainder will stand as valid and operative. Nevertheless the part that is good must be clearly distinguished from the part that is bad so that, if the invalid portion is eliminated, that which stands remains a distinct and complete ordinance capable of being enforced. Where a municipal ordinance is entire, each part being essential to and connected with the balance, the invalidity of one part renders the whole invalid." 28 Cyc., pp. 372, 373; 19 R. C. L., p. 816.

In *Chicago* v. *Gunning System,* 114 Ill. App., 377, it was held that where an ordinance is entire each part having a general influence over the rest and a particular provision thereof is void, the entire ordinance will be so declared.

To the same effect is the rule announced in Dillon on Municipal Corporations (4th Ed.), section 421.

In Cooley on Constitutional Limitations, pp. 178, 179, it is said:

"If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other; but, if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid part; and if they are so mutually connected with and dependent on each other as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

To the same effect is the rule announced in *Ex parte Mayor & Aldermen of Florence (In re Jones),* 78 Ala., 419; *State* v. *Webber,* 107 N. C., 962, 12 S. E., 598, 22 Am. St. Rep., 920; *Canova* v. *Williams,* 41 Fla., 509, 27 South., 30; *Wiesenthal* v. *Atlantic City,* 73 N. J. Law, 245, 63 Atl., 759.

We cannot say that the board of commissioners would have passed the ordinance without providing for the ramps in question. The provision for them in the ordinance was in connection with the viaduct, and they constituted a part

City of Knoxville v. Southern Ry. Co.

of the structure to be built, and, if there were no public necessity for the ramp on McGhee street, the ordinance providing for its construction was unreasonable and void. It was only upon the ground of public necessity that the city could, if at all, require defendant to build said viaduct with or without ramps.

The plans and specifications of the McGhee street ramp were not filed in the office of the city engineer until the date of the final amendment to the bill, and did not have the approval of the board of commissioners, and it could hardly be said that counsel who represented the city and drafted the bill and amendments thereto and the city engineer would have the right to substitute their judgment of the structure to be built for that of the board of commissioners.

The judgment of the court of civil appeals is therefore, for the reasons indicated, affirmed, with costs.

This conclusion renders it unnecessary to pass on the assignments of error presented by defendant's petition.